64 Cal.Rptr.3d 9 (2007)
153 Cal.App.4th 1308
E-FAB, INC., Plaintiff and Appellant,
v.
ACCOUNTANTS, INC. SERVICES, Defendant and Respondent.
No. H030624.
Court of Appeal of California, Sixth District.
July 16, 2007.
*11 Christian B. Nielsen, Anne B. Miller, Robinson & Wood, Inc., San Jose, CA, for Plaintiff and Appellant.
Eriksen, Arbuthnot, Brown, et al., Steve W. Dollar, San Jose, Benjamin Alexander Emmert, for Defendant and Respondent.
*10 McADAMS, J.
At issue in this appeal is the accrual date of the plaintiffs causes of action against the defendant for negligence, negligent misrepresentation, and breach of contract. The plaintiff was the victim of embezzlement by an employee, whom the defendant had recruited and placed with the plaintiff. The trial court concluded that the plaintiff should have discovered the embezzlement sooner, and it therefore sustained the defendant's demurrer, brought on statute of limitations grounds. The plaintiff brought this appeal from the ensuing judgment. Applying the delayed discovery rule to the plaintiffs claims of independent wrongdoing by defendant, we conclude that the trial court erred in finding the plaintiffs claims barred as a matter of law. We therefore reverse the judgment.

*12 BACKGROUND
Only two of the parties to this action are before us on appeal: appellant E-Fab, Inc. (plaintiff) and respondent Accountants, Inc. Services (defendant).

Facts[1]
Plaintiff designs and manufactures precision components and tools. Plaintiff has been in business since 1981, employing 15 to 20 individuals at any given time.
In 1996, plaintiff needed "a new bookkeeper to manage its financial affairs including accounts receivable and accounts payable." Plaintiff contacted defendant "to obtain a temporary accountant who was qualified to work for plaintiff in such a position." Defendant agreed to provide "temporary or permanent accountants to meet plaintiffs accounting needs. Defendant represented that the candidates "had been personally interviewed," that "their background, qualifications, accomplishments, employment references, academic credentials had been screened, confirmed and verified," and that "the temporary accountants had been recruited by [defendant] and were employed, supervised and managed by [defendant]."
Relying on those representations by defendant, "plaintiff hired defendant Vickie Hunt as a temporary accountant and then as a permanent accountant/bookkeeper." As it turned out, Hunt had prior criminal convictions for theft and for welfare fraud, she had been incarcerated, and she had falsified her academic credentials, but defendant had failed to discover any of those problems in its screening process.
From 1996 to 2003, while employed by plaintiff, Hunt embezzled approximately $1 million. Hunt successfully avoided detection "by making multiple small withdrawals, in irregular amounts, to different payees," by destroying records, including parts of bank statements, and "by providing the management of [plaintiff] with erroneous financial information, both oral and written, as to the status of the bank accounts," as well as assurances that the information provided was accurate. As a result, "plaintiff had no reason to believe" that the embezzlement "was occurring."
Hunt's embezzlement scheme came to light in November 2003, when a prospective "new partner" was investigating plaintiffs finances. During the course of that investigation, "he discovered that Vickie Hunt had removed and destroyed portions of the monthly bank statements the company had received. After obtaining copies of the missing documents from the bank the evidence of Vickie Hunt's embezzlement was first uncovered." Law enforcement was notified in December 2003. A police investigation and an audit of plaintiffs finances disclosed "the nature and extent" of Hunt's embezzlement.
In connection with the law enforcement investigation, the police informed plaintiff of Hunt's criminal record. "It was at that time that Plaintiff first became aware that Vickie Hunt had not been `screened' by" defendant and that defendant's "representations as to her background were false."
In March 2005, Hunt was convicted by plea, sentenced to serve four years in state prison, and ordered to pay more than $1.5 million in restitution to plaintiff.

Procedural History
Plaintiff filed its initial complaint in August 2005, naming Hunt, defendant, and others. Of the five causes of action in the *13 complaint, three were asserted against defendant: the second cause of action, for negligence; the third cause of action, for negligent misrepresentation; and the fourth cause of action, for breach of implied in fact contract.
In response to plaintiffs complaint, defendant demurred and moved to strike the causes of action asserted against it. In its supporting papers, defendant asserted several grounds for the demurrer, including the complaint's untimeliness. Defendant also asked the court to take judicial notice of several documents, including the police report. That request drew plaintiffs successful objection. Plaintiff also opposed the demurrer and motion to strike on the merits. In January 2006, the trial court sustained the demurrer on the ground that the claims against defendant were barred by the statute of limitations. In its formal order, the court stated that plaintiff had failed to adequately plead facts bringing it within the delayed discovery rule. The court granted plaintiff leave to amend its complaint.
Plaintiff filed a first amended complaint in January 2006. As before, defendant demurred on statute of limitations grounds. It also requested the court to judicially notice the "fact that it is the custom of commercial banks to send its depositors a monthly statement...." Plaintiff opposed the demurrer. In its ruling, the trial court granted the request for judicial notice. As to the second and third causes of action (for negligence and negligent misrepresentation), the court sustained the demurrer, again granting plaintiff leave to amend; as to the fourth cause of action (for breach of implied contract), the court overruled the demurrer "as Defendant failed to assert any arguments in support thereof."
Plaintiff then filed a second amended complaint in March 2006. Once again, defendant demurred and requested judicial notice of the fact that banks customarily send monthly statements. As before, plaintiff resisted the demurrer on the merits. In June 2006, the trial court sustained the demurrer to the second, third, and fourth causes of action on statute of limitations grounds, but this time without leave to amend.
In July 2006, the court entered a judgment of dismissal in favor of defendant. This appeal by plaintiff followed.

DISCUSSION
The question before us is this: Considering the facts alleged on the face of the complaint, together with judicially noticed matters, are plaintiffs claims against defendant time-barred as a matter of law? To establish the proper framework for deciding that question, we first describe the standard of review that governs this appeal, which follows a demurrer. We then address the statute of limitations issues presented here.

I. Judgment Following Demurrer: Appellate Review

A. General Principles
"A demurrer tests the pleading alone, and not the evidence or the facts alleged." (City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1998) 68 Cal.App.4th 445, 459, 80 Cal. Rptr.2d 329.) For that reason, we "assume the truth of the complaint's properly pleaded or implied factual allegations." (Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1081, 6 Cal.Rptr.3d 457, 79 P.3d 569.) We also "consider judicially noticed matters." (Ibid.) "In addition, we give the complaint a reasonable interpretation, and read it in context." (Ibid.) On appeal from a judgment of dismissal after a demurrer has been sustained without *14 leave to amend, the plaintiff has the burden of proving error. (Ibid.) "Because the trial court's determination is made as a matter of law, we review the ruling de novo." (Moreno v. Sanchez (2003) 106 Cal. App.4th 1415, 1423, 131 Cal.Rptr.2d 684.)

B. Demurrer Based on Statute of Limitations
At issue here is the sustention of defendant's demurrer on statute of limitations grounds. "The defense of statute of limitations may be asserted by general demurrer if the complaint shows on its face that the statute bars the action." (1 Schwing, Cal. Affirmative Defenses (Thomson West 2007) Statute of Limitations, § 25:78, p. 1609, fns. omitted; see Bennett v. Hibernia Bank (1956) 47 Cal.2d 540, 550, 305 P.2d 20.) There is an important qualification, however: "In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows merely that the action may be barred." (McMahon v. Republic Van & Storage Co., Inc. (1963) 59 Cal.2d 871, 874, 31 Cal.Rptr. 603, 382 P.2d 875; see also, e.g., Geneva Towers Ltd. Partnership v. City and County of San Francisco (2003) 29 Cal.4th 769, 781, 129 Cal.Rptr.2d 107, 60 P.3d 692.) "The ultimate question for review is whether the complaint showed on its face that the action was barred by a statute of limitations, for only then may a general demurrer be sustained and a judgment of dismissal be entered thereon." (Moseley v. Abrams (1985) 170 Cal.App.3d 355, 358, 216 Cal.Rptr. 40.)
In assessing whether plaintiffs claims against defendant are time-barred, two basic questions drive our analysis: (a) What statutes of limitations govern the plaintiffs claims? (b) When did the plaintiffs causes of action accrue? As both parties acknowledge, the second question is the key inquiry here. We nevertheless begin with a brief discussion of the first issue, the governing limitations statutes.

II. The Limitations Period

A. General Principles
The applicable statute of limitations depends on "the nature of the cause of action, i.e., the `gravamen' of the cause of action." (Hensler v. City of Glendale (1994) 8 Cal.4th 1, 22, 32 Cal.Rptr.2d 244, 876 P.2d 1043; see generally 1 Schwing, Cal. Affirmative Defenses, supra, § 25:1, pp. 1322-1323 at fns. 39, 43.)
As relevant here, a cause of action for negligent misrepresentation typically is subject to a two-year limitations period. (See Code Civ. Proa, § 339; Ventura County Nat. Bank v. Mocker (1996) 49 Cal.App.4th 1528, 1530-1531, 57 Cal. Rptr.2d 418. See generally, 1 Schwing, Cal. Affirmative Defenses, supra, § 25:21, pp. 1415-1416, fns. 8-9.) That same two-year period generally applies to actions "upon a contract, obligation or liability not founded upon an instrument of writing...." (Code Civ. Proc, § 339, subd. 1.) A cause of action for fraud or mistake is governed by a three-year statute of limitations. (Code Civ. Proc, § 338, subd. (d).) And the limitations period for a written contract is four years. (Code Civ. Proc, § 337; see United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 596, 83 Cal.Rptr. 418, 463 P.2d 770.)
Where more than one statute might apply to a particular claim, "a specific limitations provision prevails over a more general provision." (Creditors Collection Service v. Castaldi (1995) 38 Cal. App.4th 1039, 1043, 45 Cal.Rptr.2d 511.) "While Code of Civil Procedure section 339 applies generally to quasi-contract actions as actions `upon a contract, obligation or *15 liability not founded upon an instrument of writing,' Code of Civil Procedure section 338, subdivision (d) applies more specifically to those quasi-contract actions which seek recovery of money obtained by fraud or mistake." (Id. at p. 1044, 45 Cal. Rptr.2d 511.)

B. Application
In this case, plaintiff asserts both tort and contract claims against defendant. In its order on defendant's first demurrer, plaintiff notes, the trial court applied a two-year statute to all of its claims, citing Code of Civil Procedure section 339. Plaintiff questions that decision, arguing that negligent misrepresentation is a "species of fraud," which is subject to the three-year statute provided in Code of Civil Procedure section 338, subdivision (d). (But see Ventura County Nat. Bank v. Mocker, supra, 49 Cal.App.4th at pp. 1530-1531, 57 Cal.Rptr.2d 418 ["the essence of this cause of action is negligence, not fraud"].) Plaintiff also suggests that a four-year statute might apply to its contract claim under Code of Civil Procedure section 337. (See United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., supra, 1 Cal.3d at p. 596, 83 Cal.Rptr. 418, 463 P.2d 770 [applying that four-year statute to a claim for "negligent performance of an implied obligation which is based upon a contract in writing"].)
In any event, plaintiff states, the choice of statute has "no bearing on the issue before this court." Rather, the "key question" here relates to accrualwhether plaintiff "may rely on the discovery rule." Defendant effectively agrees, stating: "Even if section 337 applies, the statute of limitations has run because each of the causes of action accrued in 1996...." And as one commentator has observed, a dispute over which statute governs "does not preclude a demurrer when the complaint is barred no matter which statute applies." (1 Schwing, Cal. Affirmative Defenses, supra, § 25:78, p. 1612.)
We therefore turn to the question of accrual.

III. Accrual: General Principles
The limitations period commences when the cause of action accrues. (Code Civ. Proc, § 312; Fox v. Ethicon Endo-Surgery, Inc. (2005) 35 Cal.4th 797, 806, 27 Cal.Rptr.3d 661, 110 P.3d 914 (Fox); Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (Norgart).) "Generally speaking, a cause of action accrues at `the time when the cause of action is complete with all of its elements.'" (Fox, at p. 806, 27 Cal. Rptr.3d 661, 110 P.3d 914, quoting Norgart, at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.) "An exception to the general rule for defining the accrual of a cause of actionindeed, the `most important' one is the discovery rule." (Norgart, at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79; see generally 1 Schwing, Cal. Affirmative Defenses, supra, § 25:4, pp. 1334-1343.) The application of that rule is the crux of the dispute here.

A. The Discovery Rule
The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (Norgart, supra, 21 Cal.4th at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79; accord, Fox, supra, 35 Cal.4th at p. 807, 27 Cal.Rptr.3d 661, 110 P.3d 914.)
The discovery rule "may be expressed by the Legislature or implied by the courts." (Norgart, supra, 21 Cal.4th at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.) By statute, the discovery rule applies to fraud actions. (Code Civ. Proc, § 338, subd. (d).) In addition, "judicial decisions *16 have declared the discovery rule applicable in situations where the plaintiff is unable to see or appreciate a breach has occurred." (Moreno v. Sanchez, supra, 106 Cal.App.4th at p. 1423, 131 Cal.Rptr.2d 684.) "Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship. Employing this rationale, the discovery rule has been applied, sometimes by statute and sometimes through judicial decisions, to claims against professionals...." (Id. at p. 1424, 131 Cal. Rptr.2d 684.) "Courts have also employed the rule of delayed accrual in cases involving tradespeople who have held themselves out as having a special skill, or are required by statute to possess a certain level of skill." (Ibid.)
The discovery rule "protects the plaintiff, whose cause of action is preserved when, despite diligent investigation, he is blamelessly ignorant of the cause of his injuries. It also protects the defendant, who is spared precipitous litigation." (Bastian v. County of San Luis Obispo (1988) 199 Cal.App.3d 520, 529, 245 Cal. Rptr. 78.) The discovery rule "is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." (Saliter v. Pierce Brothers Mortuaries (1978) 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271.) Thus, in actions where the rule applies, the limitations period does not accrue until the aggrieved party has notice of the facts constituting the injury. (Fox, supra, 35 Cal.4th at p. 807, 27 Cal. Rptr.3d 661, 110 P.3d 914.)

B. Notice
Notice may be actual or constructive. (Civ.Code, § 18.) Actual notice is "express information of a fact," while constructive notice is that "which is imputed by law." (Ibid.) A person with "actual notice of circumstances sufficient to put a prudent man upon inquiry" is deemed to have constructive notice of all facts that a reasonable inquiry would disclose. (Civ. Code, § 19; see Hobart v. Hobart Estate Co. (1945) 26 Cal.2d 412, 439, 159 P.2d 958; 1 Schwing, Cal. Affirmative Defenses, supra, § 25:4, pp. 1340-1341 at fn. 28.)
Notice possessed by one person actual or constructivemay be imputed to another person. For example, it has long been the rule in California that "notice to an agent is notice to the principal...." (Watson v. Sutro (1890) 86 Cal. 500, 516, 24 P. 172.) "There is no difference in this respect between actual and constructive notice." (Shapiro v. Equitable Life Assur. Soc. (1946) 76 Cal.App.2d 75, 87, 172 P.2d 725.) Thus, "an employer is charged with the knowledge that an honest agent would have gained in the course of a reasonably diligent examination" of records available to it, such as monthly bank statements. (Sun `n Sand, Inc. v. United California Bank (1978) 21 Cal.3d 671, 702, 148 Cal. Rptr. 329, 582 P.2d 920; see also Basch v. Bank of America (1943) 22 Cal.2d 316, 327-328, 139 P.2d 1; Kiernan v. Union Bank (1976) 55 Cal.App.3d 111, 117, 127 Cal.Rptr. 441.)
For purposes of accrual of the limitations period, inquiry notice is triggered by suspicion. As the California Supreme Court explained in the Jolly case: "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." (Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1111, 245 Cal. *17 Rptr. 658, 751 P.2d 923 (Jolly).) The court recently reaffirmed the suspicion rule in Fox, saying "under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (Fox, supra, 35 Cal.4th at p. 803, 27 Cal.Rptr.3d 661, 110 P.3d 914, italics added.)

C. Pleading Requirements
"A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." (McKelvey v. Boeing North American, Inc. (1999) 74 Cal. App.4th 151, 160, 86 Cal.Rptr.2d 645, superseded by statue on another point, as stated in Grisham v. Philip Morris U.S.A., Inc. (2007) 40 Cal.4th 623, 637, fn, 8, 54 Cal.Rptr.3d 735, 151 P.3d 1151; accord, Fox, supra, 35 Cal.4th at p. 815, 27 Cal. Rptr.3d 661,110 P.3d 914.)

D. Question of Law or Fact
"Resolution of the statute of limitations issue is normally a question of fact." (Fox, supra, 35 Cal.4th at p. 810, 27 Cal.Rptr.3d 661, 110 P.3d 914.) More specifically, as to accrual, "once properly pleaded, belated discovery is a question of fact." (Bastian v. County of San Luis Obispo, supra, 199 Cal.App.3d at p. 527, 245 Cal.Rptr. 78.) As our state's high court has observed: "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact." (United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., supra, 1 Cal.3d at p. 597, 83 Cal. Rptr. 418, 463 P.2d 770 [reversing judgment after demurrer].) "However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law." (Snow v. A.H. Robins Co. (1985) 165 Cal.App.3d 120, 128, 211 Cal.Rptr. 271 [reversing summary judgment].) Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer, "the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence." (Bastian v. County of San Luis Obispo, at p. 527, 245 Cal.Rptr. 78.)

IV. Analysis
Governed by the foregoing principles, we turn to the case at hand. We proceed in two steps. First, we briefly address plaintiffs factual allegations concerning its former employee, Vickie Hunt, to the extent that those facts concern plaintiffs diligence in discovering the embezzlement. Next, we analyze the accrual question as it relates more directly to defendant.

A. Plaintiff's Allegations Against Hunt
As alleged in the operative pleading, Hunt successfully avoided detection by various means, including destroying parts of bank statements, and her embezzlement did not come to light until a proposed new partner investigated plaintiffs finances.[2]
Defendant asserts that plaintiff should have discovered the embezzlement earlier, saying: "It is clear from the manner in *18 which Appellant claims it first discovered Mrs. Hunt's embezzlement that the same information ... would have been discovered much earlier if it ever reviewed ... bank statements that it received on a monthly basis from 1996 to 2003." As legal support for that assertion, defendant relies principally on Sun `n Sand, Inc. v. United California Bank, supra, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (Sun 'n Sand).[3] There, the court stated, the plaintiffs "delay in discovering its mistake and commencing this action was attributable to its own negligence. If it had examined its bank statements with reasonable care, Sun `n Sand would have discovered that its employee was altering the checks issued to UCB; reasonable inquiries following such discovery would have revealed the employee's fraudulent scheme. That its dishonest employee may have concealed her perfidy by manipulating and destroying records does not exonerate Sun `n Sand of its negligent omission." (Id. at p. 702, 148 Cal.Rptr. 329, 582 P.2d 920; see also, e.g., Bosch v. Bank of America, supra, 22 Cal.2d at p. 323, 139 P.2d 1.)
We question whether the complaint before us here so clearly and affirmatively discloses plaintiffs lack of diligence in uncovering the embezzlement that the determination may be made as a matter of law. We need not decide that question, however. What concerns us here is not plaintiffs discovery of Hunt's fraud, but rather its discovery of defendant's independent wrongdoing, a point we consider now.

B. Plaintiff's Claims Against Defendant
Our analysis of the accrual of plaintiffs claims against defendant proceeds in two steps. First, we discuss the separate accrual trigger for defendant's independent wrong. Next, we assess plaintiffs second amended complaint to determine whether it meets the requisite pleading standards to survive demurrer.

1. Independent Accrual of Plaintiffs Claims Against Defendant
The first step in the analysis requires us to segregate plaintiffs claims *19 against its employee Hunt from its claims against defendant, recognizing that each may accrue at a different time. As the California Supreme Court explained in Fox, "if a plaintiffs reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." (Fox, supra, 35 Cal.4th at p. 813, 27 Cal.Rptr.3d 661, 110 P.3d 914.) In such cases, the key issue is whether "a reasonable investigation at that time would ... have revealed a factual basis for that particular cause of action." (Id. at p. 803, 27 Cal.Rptr.3d 661, 110 P.3d 914, italics added.) Applying that principle, the court in Fox held that the plaintiffs later-discovered cause of action for products liability against one defendant did not necessarily accrue at the same time as her cause of action for medical malpractice against another defendant, her surgeon. (Id. at pp. 802-803, 27 Cal.Rptr.3d 661, 110 P.3d 914.)
A similar accrual principle has been recognized in other contexts, in appellate decisions predating Fox that involve claims against a single wrongdoer. One example is Snow v. AH. Robins Co., supra, 165 Cal.App.3d 120, 211 Cal.Rptr. 271. In that case, the plaintiff, Snow, suffered an "unwanted pregnancy and resulting abortion," and sued the defendant, A.H. Robins Company, the maker of the Dalkon Shield contraceptive device that she had used. (Id. at p. 130, 211 Cal.Rptr. 271.) First addressing the plaintiffs personal injury claim, the court concluded that it was time-barred since her pregnancy and ensuing abortion made it "facially apparent `that someone has done something wrong.'" (Id. at p. 130, 211 Cal.Rptr. 271.) As the court explained, the plaintiff "cannot come eight years later to pursue these causes of action for injuries based on the unsafe nature of the Dalkon Shield when she knew in 1974 it was responsible for the abortion." (Id. at p. 131, 211 Cal.Rptr. 271.) Next, the court separately analyzed the plaintiffs allegation that "she was defrauded by Robins, which proximately caused her injuries." (Ibid.) The court stated that "the fraud is a concurrent cause of the injuries, and one which presents triable issues of fact for which summary judgment is not appropriate. [Citation.] Fraud may excuse lack of diligence on the part of plaintiff to pursue an action, and thus, the discovery-of-facts rule allows her cause of action to accrue." (Ibid.) In the court's view, Snow's factual allegations supported "a cause of action for relief based on fraudulent concealment and misrepresentation of pregnancy rates." (Id. at p. 134, 211 Cal.Rptr. 271.) As for accrual of that cause of action, the court stated: "It is painfully obvious to us plaintiff could not bring an action for fraudulent concealment of information until she learned of the possibility of any fraudulent concealment." (Ibid.) Thus, the plaintiffs awareness that her contraceptive device had failed did not commence the limitations period on her fraud claim; that claim accrued much later, when she first learned that the defendant had misrepresented pregnancy rates.
A somewhat analogous question concerning the accrual trigger was presented in Brandon G. v. Gray (2003) 111 Cal. App.4th 29, 3 Cal.Rptr.3d 330. The plaintiffs in that case "enrolled their children in the KidStop daycare facility in Sonoma County," after a County agency told them that it "was licensed, no complaints had been made about it, and it appeared to be a good daycare facility." (Id. at p. 32, 3 Cal.Rptr.3d 330.) In June 1993, they learned that at least one of their children had been sexually molested there. (Ibid.) The following month, the plaintiffs read a newspaper article "that mentioned that *20 two minor complaints had been made about KidStop." (Id. at p. 33, 3 Gal. Rptr.3d 330.) They hired two attorneys in succession to represent them against the County. (Id. at pp. 32-33, 3 Cal.Rptr.3d 330.) The second attorney, Gray, filed a claim against the County on the plaintiffs' behalf, but it was untimely. (Id. at p. 33, 3 Cal.Rptr.3d 330.) The plaintiffs then instituted this legal malpractice action. (Ibid.) The accrual date of their claim against the County was crucial to the second attorney's liability. (Id. at p. 35, 3 Cal.Rptr.3d 330.) The plaintiffs argued for accrual in July 1993, when they "first learned that, contrary to the representations of the County, complaints had been filed against KidStop." (Id. at p. 34, 3 Cal.Rptr.3d 330.) The attorney argued for accrual the prior month, when the plaintiffs "learned that at least one child had been molested." (Id. at p. 35, 3 Cal.Rptr.3d 330.) The court concluded that the plaintiffs' claims "were based on the County's misrepresentation, and therefore did not accrue until plaintiffs were on notice that the County had made a misrepresentation." (Id. at p. 36, 3 Cal. Rptr.3d 330.) Knowledge of the molestation did not provide notice of the County's misrepresentations; reading the news accounts did.
To sum up, as Fox teaches, claims based on two independent legal theories against two separate defendants can accrue at different times. (Fox, supra, 35 Cal.4th at pp. 802-303, 27 Cal.Rptr.3d 661, 110 P.3d 914.) And as Snow recognizes, a second, independent claim against a single defendant based on fraud or concealment can have a later accrual date. (Snow v. A.H. Robins Co., supra, 165 Cal.App.3d at p. 134, 211 Cal.Rptr. 271.) In Snow, the accrual trigger for the plaintiffs fraud claim was her discovery of the defendant's deception concerning pregnancy rates, not her earlier knowledge that her contraceptive device had failed, harming her. (Ibid.) Likewise, in Brandon G., the critical event for accrual was the plaintiffs' discovery of the County's misrepresentations about the daycare facility, not their earlier knowledge that their child had been molested there. (Brandon G. v. Gray, supra, 111 Cal.App.4th at p. 36, 3 Cal. Rptr.3d 330.)
Applying the foregoing legal authority, we conclude that the accrual trigger in this case was plaintiffs discovery that defendant had misrepresented Hunt's record and qualifications, not any earlier notice of Hunt's fraud. The limitations period thus commenced in November 2003, when the police reported Hunt's criminal record, which first put plaintiff on notice of defendant's independent wrongdoing.
Since plaintiff filed this action in August 2005, and since both parties agree that the shortest limitations period is two years, the action is not barred, provided only that plaintiff has met the pleading requirements imposed by the discovery rule. We turn to that issue now.

2. Adequacy of Plaintiffs Pleading
As noted above, a plaintiff invoking "the discovery rule must specifically plead facts to show (1) the time and manner of discovery and. (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." (McKelvey v. Boeing North American, Inc., supra, 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645; accord, Fox, supra, 35 Cal.4th at p. 815, 27 Cal.Rptr.3d 661, 110 P.3d 914.) We consider each of those two requirements in turn.

a. Time And Manner Of Discovery
The first prong requires plaintiffs to allege "facts showing the time and surrounding *21 circumstances of the discovery of the cause of action upon which they rely." (Bennett v. Hibernia Bank, supra, 47 Cal.2d at p. 563, 305 P.2d 20.) "The purpose of this requirement is to afford the court a means of determining whether or not the discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs actually learned something they did not know before." (Ibid.)
Here, plaintiff alleges that it "did not become aware of, nor did it have any reason to suspect, that Vickie Hunt had prior convictions for theft and welfare fraud and that her academic credentials had not been verified until after her embezzlement became known in November 2003 when Plaintiff was first informed of Vickie Hunt's criminal record by the police. It was at that time that Plaintiff first became aware that Vickie Hunt had not been `screened' by [defendant] and that [defendant's] representations as to her background were false."
Given the specificity of the foregoing allegations, we conclude that the factual circumstances of plaintiffs discovery of defendant's wrongdoing are sufficiently asserted to meet this first pleading requirement of the delayed discovery rule. (See Bennett v. Hibernia Bank, supra, 47 Cal.2d at pp. 563-564, 305 P.2d 20.) That conclusion is bolstered by a comparison with the insufficient pleadings found in other cases. Thus, for example, the pleading here is unlike those in the McKelvey case, which failed to "disclose the time or manner of discovery by any plaintiff." (McKelvey v. Boeing North American, Inc., supra, 74 Cal.App.4th at p. 160, 86 Cal.Rptr.2d 645.) As the McKelvey court described the pleadings there, the plaintiffs "offer only conclusory allegations of [defendant's] `massive cover-up,' and allegations that plaintiffs discovered that they 'may have sustained injuries' as a result of [defendant's] wrongs `less than one year prior to filing the instant action....' Before that time, they say (without elaboration), they did not suspect any wrongdoing." (Id. at pp. 160-161, 86 Cal.Rptr.2d 645, fn. omitted.) Nor is our case comparable to Unpingco v. Hong Kong Macau Corp. (1991) 935 F.2d 1043. There, "plaintiffs claimed that it was not until 1988 that Segundo Unpingco discovered the facts constituting the fraud." (Id, at p. 1045.) But they "failed to explain what it is that Segundo Unpingco discovered in 1988 that finally put him on notice of the alleged fraud." (Id, at p. 1046.) Our case, likewise is distinguishable from Mangini v. Aerojet-General Corp. (1991) 230 Cal.App.3d 1125, 281 Cal.Rptr. 827. In that case, the court observed, the "complaint fails to allege when plaintiffs made the discovery," or "the circumstances of the discovery." (Id. at p. 1151, 281 Cal.Rptr. 827.)
In contrast to the foregoing cases, the pleading here specifically describes both the time and the circumstances of plaintiffs discovery of its claim against defendant: "in November 2003 when Plaintiff was first informed of Vickie Hunt's criminal record by the police." Plaintiffs allegations show that it "actually learned something [it] did not know before." (Bennett v. Hibernia Bank, supra, 47 Cal.2d at p. 563, 305 P.2d 20.) Those allegations thus satisfy the first prong of the discovery rule's pleading requirements.

b. Inability To Have Made Earlier Discovery
As to the second pleading requirement, inability to have made an earlier discovery, plaintiff alleges that it had "no reason to suspect that [defendant] did not screen plaintiff and failed to discover she had prior convictions for theft and welfare fraud, or that her academic credentials were misrepresented, or that she was embezzling *22 money as Vickie Hunt appeared to be a competent and honest employee." Plaintiff also alleges that it relied on defendant's "expertise and experience in determining the qualifications and credentials of its accountants...."
As before, we find this averment adequate to meet the pleading requirements of the discovery rule and thus to survive demurrer. (See Bennett v. Hibernia Bank, supra, 47 Cal.2d at p. at pp. 563, 564, 305 P.2d 20.) The pleading does not suggest any circumstances that should have alerted plaintiff to its injury at defendant's hands. To the contrary, plaintiffs reliance on defendant's expertise would warrant a sense of reassurance, not alarm. (See Moreno v. Sanchez, supra, 106 Cal. App.4th at p. 1424, 131 Cal.Rptr.2d 684.) The lack of any basis for suspicion distinguishes this case from Mangini v. Aerojet-General Corp., supra, 230 Cal.App.3d 1125, 281 Cal.Rptr. 827. In Mangini the plaintiffs had actual or constructive knowledge of three key facts: the defendant's history of potentially hazardous activity on their land; a Justice Department investigation of the defendant's practices in the area; and the defendant's request to them for permission to inspect their property. (Id. at 1152, 281 Cal.Rptr. 827.) The court opined: "Whether any of these three facts in isolation would be sufficient to impart notice is open to dispute. However, the combination of these facts together establishes] as a matter of law that ... in 1984, plaintiffs had sufficient information to put them on notice of the possibility that defendant had dumped hazardous waste on their land." (Id. at pp. 1152-1153, 281 Cal.Rptr. 827.) Here, as alleged in the complaint, plaintiff possessed no factual basis for suspicion. Nor is defendant assisted by the Saliter case, in which the plaintiff "failed to state facts showing that discovery could not have been accomplished at an earlier date." (Saliter v. Pierce Brothers Mortuaries, supra, 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271.) The plaintiff there "was quickly aware of both defendant's alleged breach of duty and plaintiffs resulting injury" but he claimed that "his emotional disturbance kept him from perceiving the causal link between the two." (Ibid). In the court's view, that claim provided no justification for delayed discovery. (Ibid.) Moreover, the court observed, "the circumstances of injury are dissimilar from cases in which late discovery has been justified. It is clear from the complaint that neither plaintiffs injuries nor their cause were latent and imperceptible." (Id at p. 298, 146 Cal. Rptr. 271.) In this case, by contrast, as alleged in the second amended complaint, both plaintiffs injury and its cause were imperceptible.
In sum, we conclude, the pleading requirements for the delayed discovery rule are met here. In this case, it does not "clearly and affirmatively appear on the face of the complaint that the action is barred by the statute of limitations" and "the demurrer should have been overruled on this ground." (Geneva Towers Ltd. Partnership v. City and County of San Francisco, supra, 29 Cal.4th at p. 782, 129 Cal.Rptr.2d 107, 60 P.3d 692, fn. omitted.)

CONCLUSION
Assuming the truth of the facts alleged in plaintiffs second amended complaint, the running of the statute of limitations did not commence until November 2003, when plaintiff first learned from the police that Hunt's background was not as represented. This action was brought within two years of that discovery. Plaintiffs claims against defendant thus are not time-barred as a matter of law, and the trial court erred in sustaining defendant's demurrer on that grounds

*23 DISPOSITION
The judgment of dismissal is reversed.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and DUFFY, J.
NOTES
[1] Because this appeal follows a successful demurrer, the facts are drawn from the allegations of plaintiff's second amended complaint, the operative pleading. (See Gu v. BMW of North America, LLC (2005) 132 Cal. App.4th 195, 200, 33 Cal.Rptr.3d 617.)
[2] Those allegations are set forth in some detail in the second amended complaint, as follows: Hunt "purposefully hid her ongoing embezzlement by transferring small sums of money, in irregular amounts, on a monthly basis, from plaintiff's commercial account at Comerica Bank to accounts at other banks not readily identified as Vickie Hunt's, and to other commercial accounts and to individuals not readily identified as pertaining to or related to Vickie Hunt." Hunt further avoided detection "by destroying checks [and] transfer authorizations, removing portions of the bank statements pertaining to the fraudulent transfers, by providing the management of [plaintiff] with erroneous financial information, both oral and written, as to the status of the bank accounts, and by assuring the management of [plaintiff] that the account! ]s payable and receivable were accurate, and in accordance with company policy." Plaintiff thus "had no reason to believe she was embezzling money, to doubt her competence or her representations regarding the finances of the company, or her honesty, due to her work skills and the representations of [defendant]." Hunt's embezzlement scheme did not come to light until "November of 2003 when the company was going to take on a new partner. During the course of the potential partner's investigation into the finances, of [plaintiff], and his attempt to reconcile recent bank transactions, he discovered that Vickie Hunt had removed and destroyed portions of the monthly bank statements the company had received. After obtaining copies of the missing documents from the bank the evidence of Vickie Hunt's embezzlement was first uncovered."
[3] We acknowledge the existence of authority questioning the precedential value of Sun `n Sand. (See, e.g., Roy Supply, Inc. v. Wells Fargo Bank (1995) 39 Cal.App.4th 1051, 1067-1068, 46 Cal.Rptr.2d 309; Mac v. Bank of America (1999) 76 Cal.App.4th 562, 565, fn. 1, 90 Cal.Rptr.2d 476.) But given the basis for our decision here, we need not address that controversy.