Filed 11/22/22  Nunez v. 1431/168 Investors CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MAURICE NUNEZ et al., | B316808 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV33554) |
| v. | |
| 1431/168 INVESTORS LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rupert A. Byrdsong, Judge.  Affirmed.

Gilchrest Law Group and Robert M. Gilchrest for Plaintiffs and Appellants.

Law Office of Jeff Katofsky, Jeff Katofsky and Michael Leff for Defendants and Respondents.

———————————————

Plaintiffs and appellants Maurice Nunez (Nunez) and Mario Pena (Pena) appeal from a judgment of dismissal after the trial court sustained without leave to amend the demurrers of defendants and respondents 1431/168 Investors LLC (the LLC), Anthony Policella (Policella), and Shawn Pagohesh (Pagohesh).

Because the claims alleged against defendants are untimely, we affirm.

### FACTUAL[1] AND PROCEDURAL BACKGROUND

*The alleged oral agreement*

Plaintiffs managed several parking locations under subleases with Valet Parking Service, Inc. (VPS).[2] In or around September 2016, Policella and Pagohesh, representatives of VPS, informed plaintiffs that VPS had entered into discussions to sell its assets to LAZ Parking California, LLC (LAZ). In order to induce Nunez to agree to allow his locations to be included in the sale to LAZ, VPS, through Policella and Pagohesh, orally agreed to pay him (1) 50 percent of the sale price down payment for each location that he subleased from VPS; and (2) 50 percent of the monthly payments made by LAZ to VPS for the purchase of each location that he subleased from VPS. Separately, at around the

---

[1] "Because this matter comes to us on demurrer, we take the facts from plaintiff's [first amended complaint (FAC)], the allegations of which are deemed true for the limited purpose of determining whether plaintiff has stated a viable cause of action. [Citation.]" (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

[2] According to respondents' brief, VPS "is the registered dba of" the LLC.

same time, Policella and Pagohesh met with Pena. To induce Pena to agree to allow his locations to be part of the sale, VPS agreed to pay him 50 percent of the sale price of his four locations. In addition, VPS agreed that plaintiffs "would continue to manage their locations and take home the same amount of income as they had made prior to the close of the sale of VPS to LAZ."

The parties did not put the agreement in writing based upon Policella's representations that "'we are family'" and "'you can trust me,'" and Pagohesh's commitment to honor the oral agreement. According to the FAC, "Policella and Pagohesh concealed the fact that their real motive for insisting that the agreement remain oral was to deny the existence of the agreement and, if sued, argue the lack of a writing as a defense."

On December 1, 2016, the LLC and LAZ signed their agreement. "After signing the December 1, 2016 agreement with LAZ, Policella and Pagohesh acknowledged and affirmed the existence of the September 2016 Agreement but represented to [plaintiffs] that the down payment and monthly payments VPS received from LAZ were needed to pay various other obligations of VPS. Policella and Pagohesh further represented that, as soon as those obligations were paid off, VPS would begin making payments to [plaintiffs] under the September 2016 Agreement. Policella and [Pagohesh] represented that [plaintiffs] would continue to receive their base monthly salaries under the September 2016 [agreement]. Because Policella and Pagohesh acknowledged and affirmed the existence of the September 2016 Agreement and [plaintiffs] continued to take home the same income as required under the September 2016 Agreement, [plaintiffs] agreed to refrain from suing and/or pursuing other

means of enforcing their contractual rights under the September 2016 Agreement to 50% of the sale price for each of their locations."

On January 1, 2017, the contract of sale between the LLC and LAZ closed. However, Nunez and Pena were never paid either the percentage of the down payment or the monthly payments that VPS received from LAZ.

*Alleged breach and repudiation of the oral agreement*

During a July 22, 2020, meeting, Nunez advised Policella and Pagohesh that he had not received his monthly salary since February 2019.

At that same meeting, plaintiffs allege that Policella and Pagohesh repudiated the oral agreement when they told Nunez that they did not intend to honor, and intended to breach, the promise to pay plaintiffs 50 percent of the sale price of each location that they subleased from VPS. According to the FAC, Policella and Pagohesh took the position that the monthly salary payments were in place of any other monies allegedly due.

*The complaint and amended complaint*

Plaintiffs initiated this lawsuit on September 2, 2020. Their original complaint alleged (1) breach of contract against VPS, (2) fraud against VPS, Policella, and Pagohesh, and (3) breach of contract against LAZ. Policella and Pagohesh demurred to the second cause of action, and the trial court sustained their demurrer with leave to amend.

On February 16, 2021, plaintiffs filed an amendment to the complaint, substituting the LLC for Doe 1. That same day, plaintiffs filed their FAC. The FAC alleges breach of oral contract and fraud against VPS, Policella, Pagohesh, and the

4

LLC.[3]  According to the FAC, defendants breached the oral agreement as to Nunez in February 2019, and a repudiation of the agreement in its entirety occurred on July 22, 2020.

*Policella and Pagohesh's demurrer and motion to strike*

Policella and Pagohesh again demurred to the fraud cause of action, arguing, inter alia, that it was barred by the statute of limitations.  In addition, they filed a motion to strike on the grounds that they were impermissibly added as defendants to the first cause of action for breach of oral contract without leave of court.

Plaintiffs opposed the demurrer and motion to strike. Among other things, they asserted that Policella and Pagohesh were equitably estopped from relying upon the statute of limitations.  Alternatively, plaintiffs asserted that they adequately pled facts to support the delayed discovery rule.

Finally, plaintiffs requested leave to amend on the grounds that "there [was] a reasonable possibility that a good cause of action [could] be stated."

In response to the motion to strike, plaintiffs argued that the allegations of the FAC fell within the scope of the leave to amend granted by the trial court at the hearing on the demurrer to the original complaint.

*Trial court order on Policella and Pagohesh's demurrer and motion to strike*

After taking the matter under submission, on May 20, 2021, the trial court sustained Policella and Pagohesh's demurrer

---

[3]  The FAC also alleges a third cause of action for breach of oral contract against VPS and LAZ.

5

without leave to amend to the second cause of action (fraud) on the grounds that it was barred by the statute of limitations. The trial court found: "The FAC alleges that the parties entered into the Agreement in September 2016 and the parties did not put the Agreement in writing. [Citations.] Plaintiffs waited more than three years after the parties entered into the oral Agreement to file their Complaint in September 2020. . . . Even if the fraud claim accrued from the January 2017 sale date, the claim is still time-barred. With this amended complaint, Plaintiffs have not alleged sufficient facts to support the delayed discovery rule and certainly by the time of the July 22, 2020 meeting, the statute of limitations had long since accrued. [Citation.] . . . [E]ven if Defendants acknowledged and affirmed the existence of the September 2016 Agreement after signing the December 1, 2016 agreement with LAZ, Plaintiffs would still be on notice of the fraud and/or aware at some reasonable point thereafter that Defendants did not intend to pay Plaintiffs the money owed under the Agreement."

In so ruling, the trial court rejected plaintiffs' contention that the doctrine of equitable estoppel applied.

The trial court also granted their motion to strike. While there was no transcript of the hearing on the original demurrer, the trial court's "recollection" was "that leave to amend was granted as to the second cause of action for fraud only. The scope of the Court's grant of leave was to allege additional facts to get around the statute of limitations issue. Of course, if Plaintiffs wish to amend the Complaint to add Individual Defendants to the first cause of action for breach of contract, Plaintiffs may file a motion for leave to amend."

6

*The LLC's demurrer*

On May 20, 2021, the LLC filed its demurrer to the FAC, alleging that both the first and second causes of action were time-barred.

Plaintiffs opposed the demurrer.

On September 15, 2021, the trial court sustained the LLC's demurrers to the first and second causes of action without leave to amend.

*Order of dismissal*

On October 8, 2021, the trial court ordered Policella, Pagohesh, and the LLC dismissed from the entire action based upon its prior orders sustaining demurrers and granting Policella and Pagohesh's motion to strike.

*Plaintiffs' motion for leave to file a second amended complaint*

That same day, plaintiffs filed a motion for leave to file a second amended complaint, with claims for breach of oral contract and fraud against VPS, the LLC, and Policella. LAZ, the only remaining defendant in the action, opposed the motion, arguing the motion was an improper motion for reconsideration. After all, plaintiffs again attempted to assert facts that the statute of limitations did not begin to run on their claims until July 2020, even though the trial court had already ruled otherwise and determined that there was no basis the defect could be cured by amendment.

After entertaining oral argument, the trial court denied the motion.

*Appeal*

This timely appeal from the judgment of dismissal and order denying plaintiffs' motion for leave to file a second amended complaint ensued.

## DISCUSSION

I. *Demurrers*

A. <u>Standard of review</u>

"Our Supreme Court has set forth the standard of review for ruling on a demurrer dismissal as follows: 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citations.]" (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043–1044.)

"'The defense of statute of limitations may be asserted by general demurrer if the complaint shows on its face that the statute bars the action.' [Citations.]" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315 (*E-Fab*).)

8

B.  The trial court properly sustained the demurrers without leave to amend

### 1. *Breach of oral contract*

Actions based upon breach of oral contract are governed by a two-year statute of limitations.  (Code Civ. Proc., § 339, subd. (1).)  A claim for breach of oral contract accrues when the aggrieved party "knew or should have known that the contract had been . . . breached." (*Seelenfreund v. Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133, 136.)

Here, the FAC alleges that the parties entered into an oral contract in September 2016.  Pursuant to the terms of that oral agreement, defendants agreed to pay plaintiffs 50 percent of the sale price down payment for each location that they subleased from VPS and 50 percent of the monthly payments made by LAZ to VPS for the purchase of each location that they subleased from VPS.  The sale from VPS to LAZ closed on January 1, 2017.[4]  But the agreed-upon payments were never made.

Because plaintiffs knew or should have known at least by 2017 (after the sale occurred) that they were not receiving the monies due under the alleged oral agreement, they had until 2019 to file the instant lawsuit.  But they did not initiate this lawsuit until September 2, 2020. Thus, their action is time-barred.

### 2. *Fraud*

The statute of limitations for an action based on fraud is three years.  (Code Civ. Proc., § 338, subd. (d).)  The cause of

---

[4]  We note that while this date was alleged in the original complaint, it was omitted without explanation from the FAC.

9

action "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (*Ibid*.) The "date the complaining party learns, or at least is put on notice, that a representation was false" is the date that the statute begins to run. (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 35.)

For the same reasons discussed in connection with the breach of contract claim, plaintiffs' fraud claim is time-barred. The alleged misrepresentation occurred in September 2016. Plaintiffs reasonably knew or should have known that Policella and Pagohesh's representation about payment was false before September 2017—nine months after the deal between the LLC and LAZ closed and they still had not received any payment as allegedly promised. Because this action was not instituted until September 2020, more than three years later, it is time-barred.

### 3. *Delayed discovery*

Urging us to conclude otherwise, plaintiffs assert that their claim did not accrue because "Policella and Pagohesh . . . represented that, as soon as [other] obligations were paid off, VPS would begin making 50% payments to [plaintiffs] as required under the September 2016 Agreement." It seems that plaintiffs would like us to conclude that that alleged misrepresentation delayed the trigger of the statute of limitations.

Based upon the vague allegations of the FAC and argument set forth in plaintiffs' appellate briefs, we cannot agree. "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797,

10

807.)  "[T]he primary purpose of the [delayed discovery] rule is to protect people "'who, with justification, are ignorant of their right to sue.'"  [Citations.]"  (*Daley v. Regents of University of California* (2019) 39 Cal.App.5th 595, 604.)  In other words, "[t]he discovery rule 'protects the plaintiff, whose cause of action is preserved when, despite diligent investigation, he is blamelessly ignorant of the cause of his injuries.'"  (*E-Fab*, *supra*, 153 Cal.App.4th at p. 1318.)  "'A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.  The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.'  [Citations.]"  (*E-Fab*, *supra*, 153 Cal.App.4th at p. 1319.)

The FAC does not satisfy these pleading requirements.  While plaintiffs allege that they did not actually discover the alleged fraud and breach of contract until July 2020, they do not allege either their inability to have made that discovery sooner or any diligence.  Plaintiffs believed that they were entitled to monies upon the closing of the deal between the LLC and LAZ—in January 2017.  They did not receive those monies, apparently because Policella and Pagohesh told them at some unidentified time that the monies would be paid as soon as VPS obligations were satisfied.  Nevertheless, for years, plaintiffs did nothing to follow up on the representations or otherwise obtain the monies they were due.  Under these circumstances, plaintiffs have not shown how they adequately pled delayed discovery to withstand defendants' demurrer.

### 4. *Partial performance*

Citing *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489–490 (*Romano*), plaintiffs contend that when a contract is partially breached, the aggrieved party may elect to continue to perform under the contract until a total breach, repudiation, or termination occurs. Until that time, the statute of limitations does not begin to run. As applied here, plaintiffs assert that the oral agreement was partially performed until February 2019; there was no total breach that triggered the running of the statute of limitations until that time. We are not convinced.

As set forth above, in an action based on breach of contract, the statute of limitations begins to run from that time that a party breaches a material term of the agreement. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277.) "Nonetheless, if a party to a contract expressly or by implication repudiates the contract *before* the time for his or her performance has arrived, an anticipatory breach is said to have occurred. [Citations.] The rationale for this rule is that the promisor has engaged not only to perform under the contract, but also not to repudiate his or her promise. [Citation.] [¶] In the event the promisor repudiates the contract *before* the time for his or her performance has arrived, the plaintiff has an election of remedies—he or she may 'treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he [or she] can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his [or her] remedies for actual breach if a breach does in fact occur at such time.' [Citations.]" (*Romano, supra*, 14 Cal.4th at p. 489, italics added.)

12

*Romano* does not apply because defendants did not repudiate the alleged oral agreement before their time for performance arrived. Rather, the oral agreement was allegedly breached in 2017 when defendants did not make the payment due plaintiffs upon sale to LAZ (or any other monthly payments due thereafter). There was no repudiation or anticipatory breach before that time, which is when defendants' performance was required.[5]

During oral argument, counsel for plaintiffs asserted that pursuant to *Romano*, the allegations of paragraphs 11 and 15 of the FAC overcome defendants' statute of limitations argument. We disagree. Certainly, *Romano* recognizes that "when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract. [Citation.]" (*Romano*, *supra*, 14 Cal.4th at p. 489.) But nothing in the FAC alleges the existence of a new contractual obligation made after December 1, 2016. Rather, as set forth above, the FAC alleges that the parties entered into an oral agreement in September 2016 and at some point later defendants told plaintiffs that they needed to delay their obligations under that agreement. No new contractual obligation was reached or added to the alleged oral contract.

---

[5] Plaintiffs have not explained how to reconcile their interpretation of *Romano* (namely that a plaintiff may wait to bring an action for breach of contract until after there has been a total breach) with the well-established principle that the contract is breached when the plaintiff knew or should have known it was breached.

13

5. *Equitable estoppel*

As they did below, plaintiffs assert that defendants are equitably estopped from asserting a statute of limitations defense.  We disagree.

Evidence Code section 623 provides that whenever a party has, by his or her own statement or conduct, intentionally and deliberately led another to believe a particular thing to be true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.  "'"Equitable estoppel . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.  [Equitable estoppel] is wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice.'"  [Citations.]"  (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383.)

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel:  (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.  [Citations.]"  (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.)  The reliance must be reasonable, and the "statement or conduct must amount to a misrepresentation bearing on the *necessity* of

14

bringing a timely suit." (*Lantzy v. Centex Homes, supra*, 31 Cal.4th at p. 384, fn. 18.)

The doctrine of equitable estoppel does not apply here. The FAC "is devoid of any indication that defendants' conduct *actually and reasonably induced plaintiffs to forbear suing*" within the statutory period. (*Lantzy v. Centex Homes, supra*, 31 Cal.4th at p. 385.) At most, there is a vague allegation that defendants said that plaintiffs would be paid, but "plaintiffs have pled no facts indicating that defendants' conduct directly prevented them from filing their suit on time." (*Ibid*.) Accordingly, there is no basis to estop defendants from asserting the statute of limitations.

### 6. *Leave to amend*

Plaintiffs do not offer any evidence or argument in support of their bald claim that the demurrer was erroneously sustained without leave to amend. Instead, they rely upon their argument that their motion for leave to file a second amended complaint should have been granted. Absent a sufficiently developed argument, we find no abuse of discretion in the trial court's order. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

### II. *Motion to strike*

Plaintiffs argue that the trial court erroneously granted Policella and Pagohesh's motion to strike them from the first cause of action.[6] We disagree. Relying upon its familiarity with

---

[6] We reject Policella and Pagohesh's assertion that we cannot review the trial court's order because it is not appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a). While the order may not be appealable, it certainly is reviewable. (See, e.g., *In re A.L.* (2014) 224 Cal.App.4th 354, 362 [orders

15

the case and its prior ruling, the trial court did not abuse its discretion in granting the motion to strike. (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.) Plaintiffs have not shown otherwise.

III. *Motion for leave to file a second amended complaint*

On appeal, plaintiffs do not argue that the trial court erred in denying them leave to amend their FAC. Rather, they argue that the trial court erred in denying their subsequent motion to file a second amended complaint.

California Code of Civil Procedure section 473, subdivision (a)(1), provides, in relevant part, that a trial court may, "in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading." A trial court has wide discretion in denying leave to amend a complaint, and the ruling of the trial court will be upheld unless a manifest or gross abuse of discretion is shown. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613.)

Moreover, it is well-settled that an appellate court presumes that the judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We adopt all intendments and inferences to affirm the judgment unless the record expressly contradicts them. (*Ibid*.) An appellant has the burden of overcoming the presumption of correctness. (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

---

granting a motion to strike are typically reviewable in connection with an appeal from the final judgment]; Code Civ. Proc., § 906 ["Upon an appeal . . . the reviewing court may review . . . any intermediate . . . order . . . which substantially affects the rights of a party"].)

As pointed out by defendants, the appellate record does not provide any insight into the trial court's decision. It is possible that the trial court adopted LAZ's argument in opposition that plaintiffs' motion was an improper motion for reconsideration.[7] (Code Civ. Proc., § 1008.) After all, the trial court had already sustained defendants' demurrers without leave to amend, finding that the statute of limitations started to run well before July 2020. Yet, in their proposed amended pleading, plaintiffs continued to stick with their assertion that the statute of limitations did not begin to run until July 2020. Given that the trial court had already rejected such a theory, a finding that we readily affirm on appeal, the trial court did not err in denying plaintiffs' motion. (*Congleton v. Nat'l Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 62 [proper to deny leave when the amended pleading is insufficient to state a cause of action].)

---

[7] Plaintiffs resist this conclusion on the grounds that the trial court "invited" them to file an amended pleading at the time it granted Policella and Pagohesh's motion to strike them from the first cause of action in the FAC. At most, the trial court indicated that it would entertain a motion to amend the pleading to add Policella and Pagohesh as defendants to the first cause of action; it never "invited" a motion for leave to circumvent its ruling on the demurrers. In any event, as discussed above, the cause of action is time-barred and nothing in the proposed second amended complaint establishes that the claim is timely.

## DISPOSITION

The judgment is affirmed.  The LLC, Policella, and Pagohesh are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

18