Filed 8/23/22  Xian v. Sengupta CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BENNY XIAN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ARIJIT SENGUPTA,<br><br>        Defendant and Respondent. | A162175<br><br>(San Mateo County<br>Super. Ct. No. 19-CIV-05937) |

Plaintiff Benny Xian was a cofounder and an early investor of BeyondCore, Inc. (BeyondCore).  After his employment was terminated, he recovered investments he had made in the company as cash payments with 5 percent interest rather than obtaining shares of BeyondCore stock under convertible promissory notes and a warrant.  Several years later, BeyondCore was purchased by Salesforce, Inc. (Salesforce).  Plaintiff filed a class action lawsuit against Arijit Sengupta, the founder of BeyondCore, and other defendants, alleging various causes of action related to the Salesforce acquisition, including a fraud claim alleging that Sengupta misrepresented and concealed material facts about the early capitalization of the company.  Xian alleges that had he known those facts, he would have accepted shares in

BeyondCore rather than a cash payout, and would have realized more than $7 million in profits after the Salesforce acquisition.

Xian now appeals from the judgment entered after the trial court sustained a demurrer to his third amended complaint without leave to amend. The trial court ruled that the three-year statute of limitations barred his fraud claim, because the allegations of his third amended complaint contradicted earlier allegations in his pleadings and Xian failed to sufficiently plead delayed discovery to postpone accrual of his claim to 2019. We conclude Xian sufficiently alleged delayed discovery of his fraud claim, and accordingly reverse the judgment.

## I.

## BACKGROUND[1]

### A.    *Factual Background*

Sengupta started BeyondCore in 2004, while he was earning his master of business administration degree from Harvard University. At all relevant times, Sengupta was BeyondCore's majority and controlling shareholder and chief executive officer (CEO). Sengupta made no monetary investment in the company, but his wife provided a convertible loan of $30,000 in 2004. Two years later, Sengupta moved BeyondCore's location to California.

Xian was a cofounder, employee, and early investor in BeyondCore. Xian invested $100,000 in BeyondCore in 2007 and received a convertible promissory note (2007 Note), allowing him to convert the note to BeyondCore shares beginning in 2012.[2] As part of that transaction, Xian also received a

---

[1] The facts are taken primarily from the allegations of the third amended complaint.

[2] At the time he invested, BeyondCore was out of money and might have gone out of business were it not for Xian's investment.

2

warrant as a companion instrument to the 2007 Note (Warrant). The Warrant entitled Xian to purchase 1,111 BeyondCore shares at the conversion price of the 2007 Note ($36 per share). In 2008, Xian invested a further $50,000 and received a convertible note (2008 Note), which also allowed Xian to convert his investment to shares in BeyondCore.

In May 2010, Sengupta terminated Xian's employment with BeyondCore via e-mail without notice. By that time, BeyondCore had raised $605,000 in total capital investment since its inception in 2004, $405,000 of which had been obtained or personally invested by Xian.

Over two years later, on August 9, 2012, Jeffrey Harrell, counsel for BeyondCore, e-mailed Xian to notify him that his 2007 Note was scheduled to be "paid out" on October 26, 2012. Harrell outlined two options: (1) Xian could do nothing and receive a $125,000 payment, representing his $100,000 investment plus five years of 5 percent simple interest; or (2) he could convert the principal and accrued interest to BeyondCore shares based on the terms of the 2007 Note. If he accepted option (1), the Warrant would expire, and if he accepted option (2), he would retain the benefit of the Warrant for another year. Harrell ended the e-mail by asking Xian to "[p]lease let me know how you would like to proceed."

Four days later, counsel for Xian, Paul Tauber, e-mailed Harrell, noting Xian had forwarded Harrell's e-mail "regarding the promissory note that will mature shortly." Tauber wrote: "In order to decide how to proceed, is there any update regarding the company, fundraising efforts, etc. that can be provided?" Harrell responded that he would "reach out to the company for an update." The following week, Harrell wrote another e-mail stating: "I've confirmed with the company that BeyondCore plans to send out an overall status update to all investors by the end of the month or early next month.

3

BeyondCore has been having certain acquisition and fundraising related conversations but the details of those conversations are currently confidential."

Two weeks later, on September 3, 2012, Sengupta e-mailed Xian, copying both Harrell and Tauber. Sengupta wrote: "I wanted to give you a quick update on BeyondCore." After noting BeyondCore had been selected "a Gartner Cool Vendor in Business Process Services" and describing a new product, Sengupta wrote: "We are considering raising some money this fall and have had some initial discussions with venture capitalists. Please feel free to ask me any questions. I will of course keep you updated on any major progress on the funding front." By the end of the week, Tauber responded to Harrell that Xian would "go ahead and require payment on the due date."

On October 16, 2012, Harrell sent an e-mail to Xian and Tauber with the subject line: "BeyondCore Update." Harrell wrote: "In connection with the note you hold, BeyondCore wants to provide you with certain additional information." Harrell explained that (1) BeyondCore's new product "had additional revenue traction in the form of paid POCs but nothing very significant yet"; (2) BeyondCore was "having ongoing conversations with venture capital investors and potential acquirers though BeyondCore has not received any term sheets yet"; (3) "BeyondCore's CEO fully believes in the future of BeyondCore as evidenced by the fact that the wife of BeyondCore's CEO has invested more than $50,000 in the company in the last few months and that BeyondCore's CEO continues to not draw any salary from the company"; and (4) BeyondCore had offered to extend the expiration date of the 2007 Note by a year, allowing Xian "an additional year to consider [his] options and avoid the cancellation of [the Warrant]," but noting that "[b]y asking for payment, [Xian was] specifically rejecting this offer." Harrell

4

concluded by confirming the note would be repaid if BeyondCore did not hear back from Xian by October 19, 2012.

Xian decided not to convert the promissory note or exercise his rights under the Warrant. Based on his "past experience" at BeyondCore, "including the inability of the company to pay [Xian] his unpaid wages until he signed a release" and the lack of news from BeyondCore, Xian concluded the company "was still chronically low on funds" and that "he would be fortunate just to get his invested capital returned with 5% interest."

Xian alleges that unbeknownst to him, between September 2010 and August 2012, BeyondCore had raised $775,000 in investment capital from multiple investors. BeyondCore also concealed that within three days of the maturity date of the 2007 Note, BeyondCore raised an additional $150,000, bringing the latest fundraising efforts to $925,000. He asserts this information was material, both "in an absolute sense and relative to what took place prior to September 2010," and represented "[a]ctual and more material financial developments" than Sengupta's wife's $50,000 investment and Sengupta's salary deferral as reported by Harrell in his October 2012 e-mail. (Underscoring omitted.) At the time of these communications, Xian alleges he had no suitable alternative channel for information on BeyondCore's finances.

The following year, Xian was evaluating whether to redeem or convert the 2008 Note. Despite Sengupta's promise in his September 3, 2012 e-mail that he would "of course keep [Xian] updated on any major progress on the funding front," Xian received no further updates after Harrell's October 2012 e-mail. Having received no further updates, Xian and his attorney "assumed there were no material events" at BeyondCore. Xian's attorney advised him

"that he believed [BeyondCore] was out of money and he should get back his invested capital while he still had the chance."

Xian alleges that Sengupta again concealed material financial information prior to the maturity date of the 2008 Note, including the fact that BeyondCore had raised $1 million after Xian left the company, $950,000 of which was not disclosed to him. In addition, Sengupta concealed that BeyondCore was in serious discussions and/or due diligence with Menlo Ventures, a Silicon Valley venture capital firm, which culminated in series A financing in BeyondCore by Menlo Ventures of $9 million in February 2014. Xian alleges that investment was significant in terms of the amount invested, the prestige of the venture capital firm, and the significant increase in BeyondCore's valuation as a result of the series A financing.[3]

In September 2016, BeyondCore was acquired by Salesforce. Shares in BeyondCore were converted to shares in Salesforce at a conversion rate of 0.04059, or about 24.64 shares of BeyondCore for each share of Salesforce. BeyondCore shareholders were also provided with the opportunity for their newly converted shares to be sold. Xian alleges that had he exercised his rights under the 2007 Note, the 2008 Note, and the Warrant, he would have acquired 25,617 Salesforce shares as of September 2016. He further alleges he was economically damaged in the amount of $7,204,781 by Sengupta's fraudulent concealment of material information, the difference between the cost of acquiring the shares and their market value upon conversion to Salesforce stock.

---

[3] A search run by Xian on the web service, Dealroom.co, in August 2019, revealed that BeyondCore's valuation estimate as of February 2014 was "$36m-$54m," a value Xian alleges was "50-100x" the value Xian was led to believe was accurate when he evaluated the 2008 Note.

6

## B.  *Procedural History*

Xian filed a class action[4] complaint on October 8, 2019, followed by a first amended complaint.  After the trial court sustained demurrers to the first amended complaint with leave to amend, Xian filed a second amended complaint (SAC).  In his SAC, Xian included allegations specifically addressing his discovery of fraud after the Salesforce acquisition.

Sengupta demurred to the SAC, arguing among other things, that Xian's fraud claim was barred by the three-year statute of limitations under Code of Civil Procedure[5] section 338.  The trial court sustained the demurrer, finding that most of Xian's claims were barred by the settlement agreement he entered with BeyondCore in September 2010 and the statute of limitations.  However, the court allowed Xian leave to amend his causes of action for fraud and breach of fiduciary duty to address "alleged fraudulent omissions that occurred after September 3, 2010 regarding the sale of the note and the warrant, and only as alleged in Paragraphs 218, 219, and 220 of the Second Amended Complaint."  The trial court specifically directed Xian to "plead with specificity delayed discovery and justifiable reliance" as to those two causes of action.

Xian filed a third amended complaint (TAC), alleging only two causes of action for fraud and breach of fiduciary duty.  With respect to delayed discovery of his claims, the TAC alleged that "[i]n early September 2016," Xian received e-mails from several friends regarding the Salesforce acquisition of BeyondCore.  He searched and found online a press release

---

[4] Xian initially filed suit against a number of defendants, including BeyondCore and Salesforce, alleging 10 causes of action.  Because the only claim at issue in this appeal is Xian's fraud claim against Sengupta, we summarize only the procedural facts relevant to that claim.

[5] All further statutory references are to the Code of Civil Procedure.

about the prospective transaction. "On September 8, 2016," Xian "contacted and engaged an attorney (not current counsel) to aid him in evaluating his situation *vis a vis* [BeyondCore] and [Salesforce]. The attorney advised [Xian] to compile relevant documents he had from his [BeyondCore] tenure and to send them to him for review."

Xian alleged he and his wife moved from Silicon Valley to Pasadena in September 2016, and he was not able to access his BeyondCore documentation for several weeks, but that "[a]fter getting moved into his Pasadena residence," he started compiling BeyondCore documents he had stored and forwarded them to his attorney "in November and December 2016." Xian's attorney spent "two months on-and-off" assisting Xian with potential claims, but Xian alleged that the "documents compiled by [Xian] from his own sources were insufficient to uncover anything about [BeyondCore's] financial situation" after Xian left BeyondCore in 2010 and he "was not yet aware of the substantial investments made in BeyondCore from September 2010 onward." Xian "was also unable to determine financial details about [BeyondCore] other than what was disclosed in publicly filed documents concerning the [Salesforce] Acquisition."

Xian alleged he was advised by new counsel in November 2017 to obtain Delaware corporate filings for BeyondCore, which led to a discovery that Sengupta had improperly issued himself shares of BeyondCore. "Throughout 2018 and through August 2019, [Xian] sought additional documents on [BeyondCore]." Xian alleged that "[w]hile researching online during at [*sic*] dealroom.co circa August 26, 2019 [Xian] discovered a listing in a schedule referring to a Series A investment of $9,000,000 in February 2014 from Menlo Ventures, venture capital firm."

He further alleged that in July 2019, he "met with a prior investor" in BeyondCore. Xian had "attempted to meet with the investor a year earlier, but was unsuccessful because the investor was reluctant to discuss [BeyondCore] or provide any disclosure about [BeyondCore] until their own dealings were concluded with [BeyondCore]." The investor provided Xian with BeyondCore's "capitalization table listing all investments made in [BeyondCore] through December 2012." Xian attached the capitalization table to the TAC, and alleged "[t]his was the first time [Xian] was able to discover the existence and extent of investments" made in BeyondCore after he left.

Finally, Xian alleged he "was unable to discover the occurrence and nature of the causes of action alleged herein until the period of November 2017–August 2019 due to the non-public nature of the 2012 Cap Table and the Menlo Ventures Series A investment. The statute of limitations period for the fraud-based causes of action alleged herein did not start until [Xian's] discoveries in July–August 2019 that tipped him off to the fraudulent concealment and misrepresentations" by Sengupta and BeyondCore.

Sengupta demurred to the TAC. Sengupta argued that Xian had failed to allege delayed discovery of his fraud claim because the allegations of the TAC did not show reasonable diligence. In particular, Sengupta focused on the fact that the TAC omitted allegations contained in the verified SAC regarding "anomalies in the press release" that Xian had noticed when reading in September 2016 about the Salesforce acquisition of BeyondCore.[6]

_____

[6] In the verified SAC, Xian alleged that he noticed "some anomalies in the press release about the personnel involved at BeyondCore; the press release listed as co-founders Rahul Pathak and Griffin Chronis" but omitted Xian. "[Xian] thought this unusual, as well as insulting, because [Xian] never met either one during his three-year tenure at BeyondCore . . . . The press

9

(Boldface and italics omitted.) Sengupta argued that "[b]ased upon these alleged misgivings, Xian immediately contact[ed] and engage[d] an attorney on September 8, 2016 (over three years before filing the complaint)," but then moved and proceeded to wait a year before accessing public documents from BeyondCore's corporate filings, then waited two more years to file suit. (Boldface, italics, and underscoring omitted.) Because "Xian was on inquiry notice as of September 2016" and "had publicly available documents accessible to him the entire time," Sengupta argued he failed to demonstrate reasonable diligence and his claims should be dismissed. Xian opposed the demurrer, arguing he had adequately alleged delayed discovery and the fact that he had publicly available documents was irrelevant because the basis of the fraud cause of action was discovered only once he received the nonpublic capitalization table in July 2019.

Following briefing and a hearing, the trial court sustained the demurrer without leave to amend. The court concluded Xian had "not sufficiently pled delayed discovery to postpone accrual of the fraud and breach of fiduciary duty causes of action to 2019 when he obtained a copy of the BeyondCore 2012 Year-End Capitalization Table." Observing that delayed discovery "does not postpone accrual of a cause of actual [*sic*] discovery of all facts, but earlier to when '[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements,'" the trial court concluded Xian had not sufficiently pled delayed discovery because his allegations in the TAC "contradict[ed]" his

---

release was also at odds with the Teknos valuation report dated February 2010 that only showed [Xian] and [Sengupta] as co-founders. Further, [Sengupta] made no mention of Pathak or Chronis to prospective investors while [Xian] was at BeyondCore."

10

allegations in the SAC, and he had not sufficiently pled around the prior allegations.

Specifically, the trial court focused on the allegations that Xian "read the press release regarding the Salesforce acquisition in September 2016 and noticed the identification of two co-founders, Pathak and Chronis, whom he had never met and were never mentioned as prospective investors during his three-year tenure at BeyondCore." The court observed that "[g]iven the allegations of the [SAC] the Court finds that [Xian] would have had 'reason to at least suspect that a type of wrongdoing has injured him' in September 2016 when he read the press release that identified Pathak and Chronis as co-founders who had not been mentioned as potential investors and as evidenced by his retention of counsel that same month."

The trial court further noted that Xian omitted from his TAC allegations contained in the SAC that he and his counsel had communicated his misgivings to Sengupta in early 2017.[7] The court observed that Xian did not "allege the substance or result of any of those communications." "Instead," the trial court wrote, Xian's TAC now alleged that his counsel "spent two months on-and-off until providing [Xian] with assistance concerning potential claims" against BeyondCore and Salesforce; that the documents compiled by Xian from his own sources were insufficient to uncover anything about BeyondCore's financial situation after he left; that Xian "was not yet aware of the substantial investments made in [BeyondCore] from September 2010 onward"; and that he was unable to determine "financial details" about BeyondCore other than "what was

---

[7] Xian alleged that "[d]uring January to April 2017 [Xian] or his then-counsel exchanged several letters with [Sengupta and Salesforce] attempting to resolve potential legal issues brewing between them and [Xian] related to the [Salesforce] Acquisition."

11

disclosed in publicly filed documents" concerning the Salesforce acquisition.[8] The court found these allegations "contradict[ed] his knowledge and actions as pled" in the SAC. Concluding Xian had failed to allege delayed discovery and consequently that his claims were barred by the three-year statute of limitations, the trial court sustained the demurer without leave to amend.

This appeal followed.

## II.

## DISCUSSION

### A.    *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] . . . ' . . . [I]t is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.' " (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 (*Fox*).) We review the legal sufficiency of a complaint de novo. (*Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 730.)

---

[8] We note substantially similar allegations were pled in the SAC, which stated: "[Xian's] then-counsel spent two months on-and-off until providing [Xian] with assistance concerning potential claims against BeyondCore and [Salesforce]. The documents compiled by [Xian] from his own sources were insufficient to uncover or conclude about BeyondCore's financials and investors since [Xian] left BeyondCore in 2010 and many material transactions occurred thereafter. [Xian] was not yet aware of the existence of substantial investments made in BeyondCore from 2011 onward. [Xian] was also unable to determine financial details of the [Salesforce] Acquisition other than what was disclosed in publicly filed documents."

## B.    *Delayed Discovery*

Xian contends the trial court erred in determining his fraud claim is barred by the three-year statute of limitations under section 338, subdivision (d).  Sengupta disagrees, and asserts Xian's cause of action accrued at the latest in September 2016, when Xian learned of the Salesforce acquisition and hired a lawyer to explore his claims vis-à-vis BeyondCore and Sengupta.

The statute of limitations for a fraud claim is three years.  (§ 338, subd. (d).)  Under the delayed discovery rule, accrual of a cause of action for fraud is postponed until the plaintiff discovers, or has reason to discover, the cause of the action.  (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1318 (*E-Fab*).)  The rule is expressly incorporated in the statute.  (§ 338, subd. (d) ["The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."].)

"[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, *unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.*  In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis."  (*Fox, supra,* 35 Cal.4th at p. 803, italics added.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have

13

made earlier discovery despite reasonable diligence.' " (*Fox, supra,* 35 Cal.4th at p. 808.) "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' " (*Ibid.*)

" 'Resolution of a statute of limitations issue is normally a question of fact.' [Citation.] More specifically, as to accrual, 'once properly pleaded, belated discovery is a question of fact.' [Citation.] As our state's high court has observed: 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact.' [Citation.] 'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.' [Citation.] Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer, 'the issue is whether the trial court could determine *as a matter of law* that failure to discover was due to failure to investigate or to act without diligence.' " (*E-Fab, supra,* 153 Cal.App.4th at p. 1320, italics added.)

This is not a case where reasonable minds could draw only one conclusion from the allegations of the TAC and the facts subject to judicial notice. As stated earlier, to successfully plead delayed discovery, Xian " 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox, supra,* 35 Cal.4th at p. 808.) We are satisfied that standard is met here. Xian alleges that he first became aware that Sengupta concealed material facts about substantial investments in the company between 2010 and 2013 when he received a copy of BeyondCore's capitalization table in July 2019. He also alleges that the following month (August 2019) he learned that Menlo

14

Ventures had invested $9 million in 2014. These allegations successfully plead specific facts regarding the time and manner of discovery of the misrepresentations and omissions on which his fraud claims are based. (See, e.g., *E-Fab, supra,* 153 Cal.App.4th at p. 1325 [plaintiff sufficiently pled time and manner of discovery where allegations showed plaintiff learned something it did not know before].)

As far as the inability to have made earlier discovery despite reasonable diligence, Xian pleads that he first learned that Salesforce had acquired BeyondCore in September 2016, and began investigating potential claims he might have. He hired a lawyer and began gathering documents from his time at BeyondCore, which he sent to his lawyer in November and December 2016. But the documents he compiled were insufficient to uncover anything about BeyondCore's financial situation after he left, and he was unable to "determine financial details about [BeyondCore] other than what was disclosed in publicly filed documents" concerning the Salesforce acquisition. Xian continued to work with his lawyer and seek legal advice, and "throughout 2018 and through August 2019" sought additional documents on BeyondCore, finally obtaining the capitalization table in July 2019 and information about the series A financing the following month. Xian pleads he was unable to discover his fraud claim earlier "due to the non-public nature of the 2012 Cap Table and the Menlo Ventures Series A investment." These are not mere conclusory allegations that he was reasonably diligent, but plead specific facts about the steps Xian took to discover his claims, and that he was unable to discover the facts supporting his fraud claim because of the nonpublic nature of the information. We must accept these allegations as true at this stage of the litigation; whether he will

15

be able to prove them must be resolved another day. (*Fox, supra,* 35 Cal.4th at p. 811.)

Sengupta asks us to conclude, as did the trial court, that Xian was on inquiry notice because he learned of the Salesforce acquisition in September 2016 and had knowledge of an injury and probable wrongdoing as of that time. But our Supreme Court has instructed that injury and suspicion of wrongdoing triggers the statute of limitation, "*unless* the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Fox, supra,* 35 Cal.4th at p. 803, italics added.) Here, that is what Xian has done. As explained above, whether those allegations are true or whether a reasonable investigation would have earlier revealed a factual basis for his fraud claim are questions we cannot determine at the pleading stage.

Nor do the allegations of the TAC "contradict" the allegations of the SAC so as to bar Xian's claim. Sengupta contends Xian "alleged other facts that put him on inquiry notice, such as the identification [in the SAC] of *two investors* he supposedly did not know and other 'anomalies.' " (Italics added.) But the TAC did not allege the 2016 press release named two *investors*; it identified two individuals as co*founders*.[9] The alleged "anomalies" were "about the personnel involved at BeyondCore." Sengupta does not explain

_____

[9] As noted above, the SAC alleges that Xian "noticed some anomalies in the press release about the *personnel* involved at BeyondCore; the press release listed as *co-founders* Rahul Pathak and Griffin Chronis but omitted listing [Xian]. [Xian] thought this was unusual, as well as insulting, because [Xian] never met either one during his three-year tenure at BeyondCore . . . . The press release was also at odds with the Teknos valuation report dated February 2010 that only showed [Xian] and [Sengupta] as co-founders. Further, [Sengupta] made no mention of Pathak or Chronis to prospective investors while [Xian] was at BeyondCore." (Italics added.)

how the listing of two unknown individuals as cofounders in the 2016 press release suggests Xian should have been on notice regarding monetary investments made in the company between 2010 and 2013. The TAC does not allege Pathak and Chronis were also investors or potential investors, nor are they listed among the investors on the capitalization table. These allegations do not compel a conclusion that Xian had a factual basis for his fraud claim. As our Supreme Court has explained, "It would be contrary to public policy to require plaintiffs to file a lawsuit 'at a time when the evidence available to them failed to indicate a cause of action.' [Citations.] . . . Indeed, it would be difficult to describe a cause of action filed by a plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as anything but frivolous. At best, the plaintiff's cause of action would be subject to demurrer for failure to specify supporting facts [citation]." (*Fox, supra,* 35 Cal.4th at p. 815.)

In addition, as Xian argues, the mere fact that he hired a lawyer is not dispositive. Although Sengupta contends the fact that Xian engaged an attorney to advise him about his rights immediately after the Salesforce acquisition "reinforces the conclusion that Xian suspected something was wrong in September 2016," the act of hiring counsel alone does not show Xian knew or suspected a *factual* basis for a *fraud* claim, particularly when Xian subsequently filed a class action against multiple defendants alleging 10 causes of action. (See, e.g., *E-Fab, supra,* 153 Cal.App.4th at p. 1323 [claims based on independent legal theories can accrue at different times]; *Snow v. A.H. Robins Co.* (1985) 165 Cal.App.3d 120, 131, 134–135 [patient's awareness her contraceptive device failed her barred her personal injury claim but not her fraud claim, which accrued when she learned of the

17

defendant's misrepresentations].)   As pleaded, the allegations indicate Xian first learned of facts to support his fraud claim in July 2019.

Finally, Sengupta's attack on Xian's delayed discovery allegations do not persuade us they are insufficient as a matter of law.  Sengupta summarizes Xian's "excuses for why he dragged his feet" and notes "none [of them] are particularly illuminating," but the question of whether his investigation was diligent and reasonable may be decided as a matter of law only where one inference is possible.  The allegations that Xian learned Salesforce had acquired BeyondCore, read a press release mentioning two cofounders he had never heard of, and hired a lawyer in September 2016 do not, standing alone, establish as a matter of law that he should have suspected fraud occurred in 2012 and 2013 with respect to investments he alleges he first learned about in 2019.  (*Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 781 [" 'In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' "].)

## C.   *Other Bases for Demurrer*

In the demurrer to the TAC, Sengupta raised several additional arguments regarding Xian's inability to state a claim upon which relief could be granted, none of which the trial court addressed, and none of which Sengupta reasserts on appeal.  Because we review the trial court's ruling de novo, however, we will briefly address them.[10]

Sengupta argued in the trial court that he owed no duty to disclose the allegedly concealed financial information to Xian because he owed him no fiduciary duty.  But a duty of disclosure can arise in transactional

---

[10] Xian addressed the arguments in his opening brief on appeal.

18

relationships even where there is no fiduciary or confidential relationship between the parties. (See, e.g., *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 826 [cause of action for nondisclosure of material facts may arise where the defendant makes representations but fails to disclose facts which materially qualify those disclosed, the facts are known or accessible only to the defendant and defendant knows they are not known or discoverable by the plaintiff, or the defendant actively conceals discovery from the plaintiff]; *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 613 [if one undertakes to speak despite not having duty to do so, one is bound to make a full and fair disclosure].) Here, regardless of whether Sengupta owed Xian a fiduciary duty, Xian alleges that Sengupta made misrepresentations and concealed material information about BeyondCore's fundraising efforts, failed to respond fully and truthfully to his inquiries despite a promise to "keep [him] updated on any major progress on the funding front," and was in possession of information not discoverable by Xian due to the nonpublic nature of the capitalization table and series A financing information.

Sengupta also asserted in his demurrer that Xian had not adequately pled concealment because the e-mail sent by Xian's lawyer asking for an update on " 'fundraising efforts, etc.' " was a clearly a request regarding *current efforts* to raise *future* funds as opposed to *past* fundraising *results*, and Sengupta's response fully answered the questions that were asked. But we do not think the meaning of the question is so clear. Nor can we say Sengupta's response that "We are considering raising some money this fall and have had some initial discussions with venture capitalists," together with an invitation to "Please feel free to ask me any questions," forecloses a cause of action for fraudulent concealment. Simply put, this argument raises

19

questions of fact not amenable to resolution on demurrer. (See, e.g., *TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1368 ["Questions of fact may be resolved on demurrer only when there is only one legitimate inference to be drawn from the allegations of the complaint."].)

Finally, Sengupta argued that the TAC did not adequately allege justifiable reliance because (1) Sengupta and Xian were in an adversarial position in 2012, when the alleged concealment took place; (2) Xian could not have relied on Sengupta's statements because he asked for his investment back in cash soon after receiving Sengupta's e-mail; and (3) Xian's counsel wrote in an e-mail rejecting the conversion option that Xian had " 'other projects that he is much closer to and he'd like to allocate those funds to those projects.' " (Boldface and underscoring omitted.) While all of these arguments suggest inferences that can be drawn from the allegations of the complaint, and while further discovery may reveal additional support for them, we cannot determine as a matter of law that Xian's reliance was unreasonable at this stage of the litigation. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [" 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.' "].)

In sum, we conclude Xian has adequately pled delayed discovery so as to survive demurrer. Because we cannot determine as a matter of law that Xian's claim is barred by the statute of limitations, and none of Sengupta's other arguments raised in the trial court defeat Xian's fraud cause of action, the demurrer should have been overruled.

## III.

## DISPOSITION

The judgment is reversed and the action is remanded to the trial court for further proceedings consistent with this opinion.  Xian is to recover costs on appeal.


MARGULIES, J.


WE CONCUR:


HUMES, P. J.


WISS, J.*


A162175
*Xian v. Sengupta*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.