Filed 7/30/25  Friar Apartments v. Overland Direct CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FRIAR APARTMENTS, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> OVERLAND DIRECT, INC., <br><br> Defendant and Respondent. | B328258 <br> (Los Angeles County <br> Super. Ct. <br> No. 22VECV01357) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge. Reversed and remanded.

Manatt, Phelps & Phillips, Benjamin G. Shatz, Benjamin E. Strauss; and Philip A. Metson for Plaintiff and Appellant.

Williams Iagmin, Jon R. Williams; Hill, Farrer & Burrill, Daniel J. McCarthy; and Blanchard Krasner & French, Kipp Williams and John F. Whittemore for Defendant and Respondent.

This appeal occurs within the backdrop of several contentious lawsuits across California involving complex real estate dealings made in the midst of the 2008 global financial crisis.[1] The particular property involved in this matter is a 14-unit apartment building on Friar Street in Van Nuys (Friar property). Relying on a judgment entered by another court and its own factual findings based on judicially noticed matters, the trial court determined on demurrer that plaintiff and appellant Friar Apartments, LLC (appellant), held no interest in the Friar property. Appellant appeals from the trial court's judgment of dismissal following defendant and respondent Overland Direct, Inc.'s (respondent or Overland) successful demurrer.[2]

We conclude the judgment relied upon in sustaining the demurrer cannot be a basis for dismissing the action because the judgment has since been vacated by the Fourth District Court of Appeal in a nonpublished opinion, *Overland Direct, Inc. v. Esola Capital Investment, LLC* (Feb. 28, 2024, D080447) (*Overland Direct*). Further, the trial court could not properly sustain the demurrer based on its own factual findings derived from judicially noticed matters. Thus, we reverse and remand to have a new order entered overruling the demurrer.

---

[1]     We granted appellant's and respondent's requests for judicial notice of court records in the other actions relating to this case.

[2]     Appellant also filed a motion for reconsideration, which the court denied. Respondent claims appellant is appealing from the denial of the motion for reconsideration, but the record does not support this assertion. Regardless, "[d]enial of a motion for reconsideration is not an appealable order." (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 973.)

## BACKGROUND

**Background facts**

*The parties' relationship and dealings as to the Friar property*

Respondent is the record owner of the Friar property, claiming title after a trustee's sale in November 2021. Respondent's title is subject to a first deed of trust and assignment of rents executed by A&S Boulevard, LLC (A&S), as trustor, to American Securities Company, as trustee, for the benefit of Wells Fargo Bank National Association (Wells Fargo), as beneficiary. This deed of trust secures a $2.4 million loan Wells Fargo issued to A&S. Appellant paid Wells Fargo to obtain assignment of this loan and deed of trust. This payment included the outstanding principal and accrued interest, as well as Wells Fargo's attorney's fees to defend its status as a secured lender.

*Ownership and title disputes relating to the Friar property*

This case is among many other ownership and title disputes relating to the Friar property, the facts of which provide the context needed to understand this matter. In 2007, respondent Overland made loans to California property owners secured by liens on real property. Overland issued a loan to Michael Cartwright, secured by a first deed of trust on real property located in El Cajon (Cartwright property), which was owned by his business, Cartwright Termite & Pest Control, LLC (Cartwright Termite). Overland also made a loan to Sarkis Grigoryan to construct the Friar property, secured by a first deed of trust on the property.

Following the financial crisis, Daniel Tepper, the owner of Esola Capital Investment, LLC (Esola), was hired to assess Overland's assets and records. Overland's deeds of trust were ultimately assigned to Esola, which included the first trust deeds on the Friar and Cartwright properties. The validity and scope of these assignments are heavily disputed. Esola subsequently assigned the Friar property note and deed of trust to A&S. In November 2012, A&S foreclosed on the note and became the fee simple owner through a trustee's sale. Once A&S took possession of the Friar property, A&S spent over $ 1 million to complete construction of a then partially completed 14-unit apartment building on the property. After the construction concluded, A&S obtained the aforementioned $2.4 million loan from Wells Fargo.

In 2010, Esola attempted to foreclose on the first trust deed on the Cartwright property after Cartwright Termite defaulted. To prevent the foreclosure, Cartwright Termite filed an action against Esola and Tepper in San Diego County Superior Court, *Cartwright Termite & Pest Control, Inc. v. Esola Capital Investment, LLC* (37-2011-00071216-CU-OR-EC) (*Cartwright* action). The *Cartwright* action involved the Cartwright property in El Cajon, not the Friar property. A&S and Wells Fargo were not parties to or served with a summons and complaint in the *Cartwright* action. Judge Eddie C. Sturgeon presided over the *Cartwright* action. The trial court dismissed all of Cartwright Termite's causes of action, except for its declaratory relief claim. When the court ruled Cartwright Termite lacked standing to sue Esola and Tepper for fraud in 2013, Cartwright sought to acquire Overland from the bankruptcy estate of its purported owner, Doron Ezra. Cartwright eventually purchased "the Estate's interest, if any" in Overland.

Afterwards, Cartwright, purportedly acting as Overland, filed a series of complaints. Overland filed a complaint in intervention in January 2016 against Esola and Tepper in the *Cartwright* action, alleging claims for fraud and declaratory relief with respect to the two assignments of the Cartwright property deed of trust. A&S and Wells Fargo were not parties to or served with a summons and complaint in this complaint in intervention.

Overland (via Cartwright) filed two other cases against Tepper and Esola that did involve Overland's assignment of the Friar property deed of trust and named A&S and Wells Fargo as parties. Overland filed *Overland Direct, Inc. v. Esola Capital Investment, LLC* (LC103983) in March 2016 against Esola, Tepper, A&S, and Wells Fargo in Los Angeles County Superior Court (LA Friar action). It was alleged in this action that A&S acquired its interest in the Friar property through a fraudulent assignment of a loan Overland made to Grigoryan.

The other case Overland filed was in San Diego County Superior Court, *Overland Direct, Inc. v. Esola Capital Investment, LLC* (37-2013-00078078-CU-BT-CTL) (SD Friar action). A&S and Wells Fargo were substituted as Doe defendants in this action. The SD Friar action sought largely the same relief as the LA Friar action. The SD Friar action was initially before Judge Sturgeon. The case was then reassigned to Judge Joel R. Wohlfeil after A&S moved to disqualify Judge Sturgeon pursuant to Code of Civil Procedure section 170.6.[3]

In 2018, Overland moved to transfer the LA Friar action to San Diego County Superior Court to be consolidated with the SD

---

[3] All undesignated statutory references are to the Code of Civil Procedure.

5

Friar action. The consolidation motion was granted, and the SD Friar action became the lead case (consolidated SD Friar actions).

### *Trial in the* Cartwright *action and the amended judgment*

In August 2016, a one-week bench trial was held on Cartwright Termite's cause of action for declaratory relief. Since the claims in Overland's complaint in intervention was severed before trial, only Cartwright Termite's remaining declaratory relief claim was adjudicated. This first phase of the trial concerned only the Cartwright property.

In September 2020, a one-day trial was held on Overland's complaint in intervention. Since Tepper and Esola failed to appear, this second phase of trial was uncontested and lasted only approximately 40 minutes. The trial court awarded Overland compensatory and punitive damages against Esola and Tepper for fraud and malicious conduct. The court's minute order directed Overland's attorney to provide two statements of decision but otherwise did not address the Friar property. The court accepted the statements of decision and entered judgment in favor of Overland and against Tepper and Esola in November 2020.

However, unlike the first phase of trial, properties other than the Cartwright property were affected in phase two. The trial court later amended the judgment nunc pro tunc, adding parcel numbers and legal descriptions for each property under its respective deeds of trust bound by the judgment (*Cartwright* amended judgment). Relevant to this matter, paragraphs 8 to 10 of the *Cartwright* amended judgment voided (1) an August 12, 2010 assignment of the Friar property deed of trust from Overland to Esola, in trust for Aurora Fidelity, naming LSI Title

as trustee; (2) a June 10, 2010 assignment of the Friar property deed of trust naming LSI Title as trustee; and (3) a May 4, 2011 substitution of trustee against the Friar property replacing LSI Title with Citivest Financial Services, Inc.

After the *Cartwright* amended judgment was entered, Overland sought to admit it in the consolidated SD Friar actions to initiate nonjudicial foreclosure proceedings on the Friar property. A&S specially appeared in July 2021 and moved to set aside the amended judgment as void pursuant to section 473, subdivision (d). The trial court denied A&S's motion in February 2022. A&S appealed.

### *Trial in the consolidated SD Friar actions*

In 2021, the phase 1 of trial involving equitable claims as to the Friar property proceeded in the consolidated SD Friar actions. In March 2022, the trial court issued an interlocutory order. The court found in the interlocutory order that Tepper engaged in fraud no later than June 10, 2010, which caused harm to Overland. The court found Overland carried its burden as to A&S, demonstrating A&S did not acquire the note and deed of trust as to the Friar property based on the assignment from Esola. Further, the court found A&S did not acquire valid title to the Friar property at the trustee's sale and by the trustee's deed upon sale. The court determined A&S was not a bona fide purchaser of the Friar property.

However, the court found: "Defendant Wells Fargo carried its burden that it is a bona fide encumbrancer of the Friar Property pursuant to its deed of trust against the Friar property . . . . At the time of its 2015 loan to Defendant [A&S], Wells Fargo (i) acted in good faith; (ii) received a lien or encumbrance on the Friar property; (iii) made the loan without

7

knowledge or notice of competing claims on the Friar property; and (iv) in making the loan, parted with something of value in consideration for the encumbrance." The court added: "Overland's rights and responsibilities with respect to the Friar property are subject to the rights and responsibilities of Defendant Wells Fargo under Wells Fargo's deed of trust against the Friar Property . . . ."

Final judgment was entered in the consolidated SD Friar actions in December 2023.[4] The judgment noted the interlocutory order, stating, "[i]n the Interlocutory Order, the Court found that Defendant Wells Fargo is a bona fide encumbrancer of the Friar Property pursuant to its Deed of Trust against the Friar Property . . . ." The judgment also indicated, "[s]ubject to the first priority lien of the Wells Fargo Deed of Trust recorded March 31, 2015 in Los Angeles County . . . and encumbering the Friar Property, title is hereby quieted in favor of Overland Direct, Inc. . . ." In March 2024, final judgment was entered against the defaulted defendants, Tepper and Esola.

### *Appellant's complaint*

In September 2022, appellant filed a complaint containing one cause of action for foreclosure of trust deed against respondent. Appellant averred respondent had not paid any sums due under the note and trust deed as to the Friar property, which were assigned to appellant from Wells Fargo. These unpaid sums allegedly included the principal balance, all accrued and unpaid interest, and fees and costs of the Chicago Title.

---

[4] The judgment in the consolidated SD Friar actions has since been appealed and the matter is currently pending in the Fourth District Court of Appeal (D084098).

8

Further, the complaint alleged respondent breached its obligations under the trust deed to pay any general, special, city, or county taxes affecting the Friar property. Respondent also allegedly failed to maintain the required insurance under the trust deed. Appellant averred it performed all of its obligations under the note and trust deed other than those excused by respondent's material breaches. The complaint thus alleged respondent was in material breach of its obligations under the note and trust deed. The complaint mentioned nothing regarding Tepper or Esola.

**Procedural history**

### *Respondent's demurrer*

In November 2022, respondent filed a demurrer to appellant's complaint on the ground it failed to state a cause of action pursuant to section 430.10, subdivision (e). Respondent contended Overland's deed of trust was recorded years before Wells Fargo's deed of trust. Respondent argued Judge Sturgeon in the *Cartwright* action issued a judgment declaring the altered assignment from Overland to Esola void, which broke the chain in title to the Friar property and rendered the assignment from Esola to A&S void. Respondent asserted, because A&S's title was void, Wells Fargo's deed of trust was also void. Respondent maintained Wells Fargo could not have been a bona fide encumbrancer when its deed of trust was recorded because A&S's void title meant it had no authority to pledge the property as collateral for Wells Fargo's note.

Respondent posited Judge Wohlfeil's interlocutory order in the consolidated SD Friar actions did not change the effect of the *Cartwright* amended judgment because Judge Sturgeon found the altered assignment of the deed of trust from Overland to

9

Esola was not signed by Ezra, the purported owner of Overland at the time.[5] Respondent argued, given Ezra purportedly signed the altered assignment, the signature was therefore a forgery. Respondent maintained the *Cartwright* amended judgment already voided the altered assignment; A&S thus never acquired valid title and was unable to pledge the Friar property to Wells Fargo.

Alternatively, respondent demurred on the ground there is another action pending between the same parties on the same cause of action pursuant to section 430.10, subdivision (c). Respondent contended appellant raised the same issue as the one raised in the consolidated SD Friar actions, i.e., the validity of A&S's title. Respondent argued it was immaterial appellant was not a named defendant in the consolidated SD Friar actions because Wells Fargo was a party thereto and appellant had chosen to defend the Wells Fargo trust deed and will be bound by the final judgment entered in the case.

In opposition, appellant contended the demurrer had no merit because Wells Fargo was not a party to the *Cartwright* action and was therefore not bound by the amended judgment. Further, appellant argued there were outstanding issues that had to be determined because the *Cartwright* amended judgment had been appealed. Appellant maintained the only adjudication of Wells Fargo's deed of trust is reflected in Judge Wohlfeil's interlocutory order in the consolidated SD Friar actions, which found Wells Fargo was a bona fide encumbrancer. Appellant

---

[5] Respondent also asserted the interlocutory order was not yet final. While the interlocutory order in the consolidated SD Friar actions was not yet final at the time of the demurrer, the order was later confirmed in the final judgment.

10

asserted a bona fide encumbrancer's interest had priority over a prior interest. Appellant posited the Wells Fargo deed trust was therefore the senior lien and appellant, as the assignee, was entitled to pursue judicial foreclosure based on the existing Friar property lien. As to abatement, appellant argued it was unwarranted because there was no proceeding in which respondent would be excused from paying its debt.

### *The trial court's ruling on respondent's demurrer*

In January 2023, the trial court sustained respondent's demurrer without leave to amend. The court took judicial notice of recorded documents in the title of the Friar property, as well as the pleadings and rulings in the *Cartwright* action and the consolidated SD Friar actions. The court discussed the *Cartwright* amended judgment and the interlocutory order in the consolidated SD Friar actions. The court first noted the *Cartwright* amended judgment found the assignment of a trust deed on the Friar property between Overland and Esola was void.

The trial court went on to acknowledge the finding from the interlocutory order in the consolidated SD Friar actions that Wells Fargo was a good faith encumbrancer, despite the assignment from Esola to A&S being found void. The court also noted the finding in the interlocutory order that respondent's rights and responsibilities as to the Friar property were subject to Wells Fargo's rights and responsibilities under its deed of trust.

However, the trial court disagreed with the interlocutory order that Wells Fargo obtained a valid interest in the Friar property and could pass its interests therein to appellant. In reaching this conclusion, the court initially noted that when an instrument of title is void *ab initio*, as opposed to voidable, it has

11

no effect even against a bona fide purchaser. The court found the altered assignment to Esola was void *ab initio* because it resulted from forgery, not fraud as the consolidated SD Friar actions found. The court found the assignment fell within the definition of forgery because Tepper altered the conveyance without any authority to do so. The court also rejected appellant's argument that Wells Fargo was a good faith encumbrancer by indicating the A&S foreclosure occurred after the *Cartwright* amended judgment deemed void the Esola deed of trust.

At the conclusion of the order on the demurrer, the court found it did not need to reach the issue of abatement under section 430.10, subdivision (c).

In January 2023, appellant moved for reconsideration of the court's order on the demurrer pursuant to section 1008 and the court's inherent power to reconsider its own orders. In March 2023, the court denied the motion for reconsideration, finding appellant provided no new facts, law, or circumstances. The court noted appellant offered a few new arguments, but they were not based on any new facts or law and appellant failed to explain why the arguments could not have been made in the opposition to the demurrer. The court indicated appellant had not offered a compelling reason to reconsider the ruling on the demurrer.

A judgment of dismissal was entered on March 15, 2023. Appellant timely appealed.

### *The Fourth District Court of Appeal vacated the* Cartwright *amended judgment*

In February 2024, the Fourth District Court of Appeal issued an opinion in *Overland Direct, supra*, D080447 reversing the order denying A&S's motion to set aside the *Cartwright*

amended judgment.[6] The *Overland Direct* court concluded the trial court "exceeded the scope of the operative pleading, rendering the Amended Judgment void as to the named defendants. [A&S] was sufficiently affected by the Amended Judgment, which resulted in foreclosure on its property, to bring this voidness claim." (*Overland Direct, supra*, D080447.) It was determined Overland's original complaint in intervention was the operative pleading. (*Ibid.*) The court found the *Cartwright* amended judgment was "void because due process prevented the trial court from expanding the scope of relief sought in the operative complaint at an uncontested trial." (*Ibid.*)

The *Overland Direct* court determined there was no basis to conclude Esola or Tepper had due process notice that their rights as to the Friar property would be adjudicated in the *Cartwright* action. (*Overland Direct, supra*, D080447.) The court noted the Cartwright property was the only property identified in the pleading as a whole and expressly referred to in the prayer for relief. (*Ibid.*) Further, the court indicated the opening and closing statements in the first phase of the trial in the *Cartwright* action confirmed the case only involved the Cartwright property. (*Ibid.*) The court acknowledged evidence of the Friar property was presented at trial, but it concluded the mere presentation of such evidence did not furnish adequate notice that the validity of assignments affecting the Friar property would be adjudicated. (*Ibid.*)

---

[6]     The Fourth District Court of Appeal initially issued an opinion in this matter on December 22, 2023. But that December opinion was vacated and replaced with the opinion on February 28, 2024.

In conclusion, the *Overland* court determined, "Tepper and Esola failed to appear for the second phase of trial, but an uncontested trial held in their absence could not, consistent with due process, exceed the scope of relief requested in the operative complaint. [Citation.] Nonetheless, paragraphs 8, 9, and 10 of the Amended Judgment dealt with the Friar property." (*Overland Direct, supra*, D080447.) The court reversed the order denying the set aside motion and directed the trial court "to enter a new order that grants the motion, vacates the Amended Judgment as void, and enters a new judgment that limits relief to the Cartwright property and does not void any instruments that were not referenced in Overland's original complaint in intervention filed in January 2016." (*Ibid*.)

## CONTENTIONS ON APPEAL

Appellant asserts two main arguments. First, appellant contends the *Cartwright* amended judgment cannot be a basis for sustaining respondent's demurrer because that judgment was appealed and has since been vacated. Appellant argues the vacated judgment cannot bind third parties, such as appellant, Wells Fargo, and A&S. Second, appellant asserts the trial court improperly made a factual finding on demurrer that a deed of trust in the Friar property's chain of title was forged. Appellant maintains, it is inappropriate to make factual findings on demurrer, especially when the court relied on judicially noticed matters that have been appealed or vacated, and no other court has made such findings.

## DISCUSSION

### I. The trial court cannot rely on the *Cartwright* amended judgment and its own factual findings in sustaining the demurrer

#### A. *Applicable law and standard of review*

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) "We may also consider matters that have been judicially noticed." (*Ibid*.)

"A demurrer tests the legal sufficiency of the challenged pleading." (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1103.) "We accept as true all material facts properly pleaded in the complaint, but do not assume the truth of contentions, deductions, or conclusions of fact and law." (*Ibid*.) "The question of a plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court and plaintiffs need only plead facts showing that they may be entitled to some relief." (*Ibid*.)

"When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670.) "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "[T]he plaintiff has the burden of demonstrating that 'there is a reasonable possibility the plaintiff could cure the defect

15

with an amendment.'" (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 135.)

### B. *Appellant has standing to appeal*

As an initial matter, respondent contends appellant has no standing to appeal this matter because appellant later assigned the rights under the Wells Fargo deed of trust to A&S, who enforced them and obtained an award of attorney's fees. Respondent argues this violated the "one action" rule under section 726, subdivision (a), which prohibits a multiplicity of actions under one note and deed of trust. Respondent asserts appellant thereby waived its right to judicially foreclose on the assigned Wells Fargo deed of trust, which precludes appellant from further actions thereon.

Any aggrieved party may appeal from an adverse judgment. (Code Civ. Proc., § 902.) "'"One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment." [Citation.] Conversely, "A party who is not aggrieved by an order or judgment has no standing to attack it on appeal."'" (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67.) "Appellant's interest '"must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."'" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.)

Appellant has standing to appeal this matter because the judgment of dismissal was entered directly against appellant. Appellant's complaint was dismissed with prejudice and appellant was to receive nothing from respondent. Thus, the judgment directly injures appellant's interests because appellant may not proceed with its claims against respondent.

16

While there may be issues as to whether appellant assigned certain rights under the Wells Fargo deed of trust that bar appellant from further pursuing its claims, respondent raises arguments and disputed factual matters that were neither at issue in the demurrer nor considered by the trial court. "It is axiomatic that as a court of review we usually decline to review issues which have not yet been considered in trial courts." (*McMillin Development, Inc. v. Home Buyers Warranty* (1998) 68 Cal.App.4th 896, 911.) "[A] party must raise an issue in the trial court if they would like appellate review." (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054.) Because appellant factually disputes the assignment issues raised by respondent and they were never raised or considered in the trial court, we conclude it is inappropriate to consider those issues here.

### C. *The demurrer cannot be sustained based on the now-vacated* Cartwright *amended judgment*

Appellant argues the *Cartwright* amended judgment cannot be a basis for sustaining respondent's demurrer because the judgment was later appealed and vacated by the Fourth District Court of Appeal. Appellant asserts the amended judgment cannot bind appellant because it was vacated on the ground it violates due process. Appellant maintains the matters at issue do not meet the requirements of claim or issue preclusion for sustaining the demurrer. We agree.

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar

relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)

In contrast, "[*i*]*ssue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) However, "[i]n accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party." (*Ibid*.) "In summary, issue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at p. 825.)

We note in particular that "claim preclusion requires a final judgment on the merits, while issue preclusion requires a final adjudication of an issue. [Citations.] A judgment or adjudication is on the merits if the substance of the claim or issue is tried and determined." (*Parkford Owners for a Better Community v. Windeshausen* (2022) 81 Cal.App.5th 216, 227.) As to claim preclusion, "[o]nly a final judgment on the merits between the same parties or their privies and upon the same cause of action is entitled to the [claim preclusion] effect of bar or merger." (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1219.) "And, without a doubt, 'final' means after an appeal is concluded or the time within which to appeal has passed." (*McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 287.)

"For purposes of issue preclusion, a final adjudication includes "'any prior adjudication of an issue in another action

18

that is determined to be sufficiently firm to be accorded conclusive effect.'" [Citation.] "'[T]hat the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.'"'" (*Rodriguez v. Lawrence Equipment, Inc.* (2024) 106 Cal.App.5th 645, 658.)

We conclude the *Cartwright* amended judgment cannot be a basis to dismiss the underlying action because there was no final judgment or adjudication for purposes of claim or issue preclusion when the trial court issued its order. Here, the court noted the *Cartwright* amended judgment deemed void the assignment of the Friar property deed of trust between Overland and Esola. The court also rejected appellant's argument that Wells Fargo was a good faith encumbrancer by indicating A&S's foreclosure occurred after the *Cartwright* amended judgment deemed void the Esola deed of trust.[7] Thus, the court relied on the *Cartwright* amended judgment and that matter's findings to sustain the demurrer.

However, the *Cartwright* amended judgment was subject to appeal at the time the trial court issued its order. Indeed, the judgment was later appealed and vacated by the Fourth District

---

[7] The parties here dispute whether the trial court made a typographical error as to the year A&S foreclosed on the Friar property. However, both parties agree A&S foreclosed in November 2012, not November 2021 as stated in the minute order. Regardless of whether a typographical error was made, the court's statement indicates the order sustaining the demurrer relied on the *Cartwright* amended judgment, which cannot be a basis to conclude no cause of action is stated, as discussed *post*.

19

Court of Appeal in *Overland Direct, supra*, D080447. The *Overland Direct* court concluded the trial court in the *Cartwright* action exceeded the scope of the operative pleading, rendering the amended judgment void. (*Overland Direct, supra*, D080447.) The Court of Appeal added there was "no basis to conclude that Esola or Tepper had due process *notice* that their rights to the Friar property would be adjudicated in the *Cartwright* action." (*Ibid*.) It was noted the Friar property was not mentioned in Overland's operative complaint. (*Ibid*.) The *Overland Direct* court indicated, "Tepper and Esola failed to appear for the second phase of trial, but an uncontested trial held in their absence could not, consistent with due process, exceed the scope of relief requested in the operative complaint." (*Ibid*.) The trial court was directed to enter a new order granting A&S's set aside motion and vacating the *Cartwright* amended judgment as void. (*Ibid*.)

As discussed above, a judgment cannot have preclusive effect if it is subject to appeal. Not only was the *Cartwright* amended judgment subject to appeal when the trial court sustained respondent's demurrer, the judgment was subsequently appealed and ultimately overturned. The time within which to appeal had not passed and no appeal had concluded when the court issued its order. Thus, the *Cartwright* amended judgment could not be considered "final" when the demurrer was sustained for purposes of claim or issue preclusion.

In addition, the *Cartwright* amended judgment does not satisfy the requirements of claim or issue preclusion because appellant was not a party or privy to a party in the *Cartwright* action. A&S and Wells Fargo were never served with a summons or complaint in the *Cartwright* action and were not parties thereto. A&S and Wells Fargo were also neither served nor

20

parties to respondent's complaint in intervention filed in the *Cartwright* action. Claim preclusion requires lawsuits involving the same parties and causes of action. (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) As to issue preclusion, while nonparties can invoke this doctrine, it can only be asserted against one who was a party in the prior action or one in privity with that party. (*Id*. at pp. 824–825.) Thus, none of these requirements for issue and claim preclusion are met here.

Respondent contends the decision in *Overland Direct* is based purely on procedural grounds and does not vacate the trial court's factual findings in the *Cartwright* action. However, *Overland Direct* sets forth no such limitations. The disposition in *Overland Direct* is clear that "[t]he trial court is directed to enter a new order that grants the motion, *vacates the Amended Judgment as void*, and enter[] a new judgment that *limits relief to the Cartwright property* and does not void any instruments that were not referenced in Overland's original complaint in intervention filed in January 2016." (*Overland Direct, supra*, D080447, italics added.) Thus, *Overland Direct* entirely vacated the *Cartwright* amended judgment as void. And by limiting relief to the Cartwright property, no judgment affecting the Friar property can be entered in the *Cartwright* action. There is nothing in *Overland Direct* indicating any of the court's factual findings affecting the Friar property were left intact.

Respondent also argues it never asserted the doctrines of claim or issue preclusion in its demurrer and was not required to do so. Respondent maintains the trial court can take judicial notice of the truth of factual findings in an order or judgment. But "[j]udicial notice of the truth of the content of court records is appropriate only when the existence of the record itself precludes

21

contravention of that which is recited in it, for example where findings of fact, conclusions of law or judgments bind a party for purposes of [claim preclusion] or [issue preclusion]." (*Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 473; see *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1567–1568 [holding judicial notice cannot properly be taken of the truth of a court's factual findings where principles of claim or issue preclusion do not apply].) Thus, given claim and issue preclusion did not apply in the matter, taking judicial notice of the truth of the factual findings in the orders and judgments from the *Cartwright* and Friar actions to decide the demurrer was not appropriate.

Indeed, where claim and issue preclusion do not apply, taking judicial notice of the truth of factual findings in prior orders or judgments would improperly transform a demurrer proceeding into an incomplete evidentiary hearing. In such circumstances, the opposing party is unfairly bound by the trial court's factual findings without the opportunity to present extrinsic evidence to dispute them. "[A] court cannot by means of judicial notice convert a demurrer into an incomplete evidentiary hearing in which the demurring party can present documentary evidence and the opposing party is bound by what that evidence appears to show." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 115.) Hence, while respondent never asserted claim or issue preclusion in the underlying proceeding, the trial court could only properly sustain the demurrer based on such doctrines. Since those doctrines did not apply, the demurrer could not be sustained based merely on

taking judicial notice of the truth of factual findings in prior orders or judgments.[8]

### D. *The demurrer cannot be sustained based on the trial court's own factual findings*

Appellant also posits, in sustaining the demurrer, the trial court cannot not rely on its own factual finding that A&S's chain of title was forged. Appellant contends it is not proper for the court to make factual findings on a demurrer, especially when it relied on judicially noticed matters that have been appealed or vacated and no other court has made such findings.

""""A demurrer is simply not the appropriate procedure for determining the truth of disputed facts." [Citation.] The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable."" (*Fremont Indemnity Co. v. Fremont General Corp., supra*, 148 Cal.App.4th at pp. 113–114.) "[J]udicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed." (*Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134.)

We agree the trial court cannot rely on its own factual findings in sustaining the demurrer. Here, the court made its

---

[8] The issue of abatement was also raised in the demurrer and in respondent's brief. Respondent asserts appellant should not be allowed to argue the trial court should have abated the action because appellant opposed abatement during the demurrer proceeding. Appellant does not argue for abatement in this appeal and the court never reached this issue. Thus, we will not consider the issue here.

own factual finding that A&S's chain of title was forged based on judicially noticed matters. The court in the consolidated SD Friar actions found the assignment of respondent's deed of trust to Esola was void due to fraud, making the assignment of the same deed of trust to A&S void since A&S would not be a bona fide purchaser in the trustee's sale. Despite this finding, the court in the consolidated SD Friar actions ultimately found Wells Fargo made its loan to A&S in good faith and thus was a bona fide encumbrancer of the Friar property pursuant to its deed of trust. The court in the consolidated SD Friar actions determined respondent's rights and responsibilities as to the Friar property were subject to Wells Fargo's rights and respondents under its deed of trust.

However, the trial court here was not convinced by the fraud findings in the consolidated SD Friar actions and instead reached its own conclusion that the altered assignment was due to forgery, not fraud. The court found Tepper altered a conveyance without authority to do so, which fell within the definition of forgery rather than fraud. The court noted a forged instrument was void *ab initio*, as opposed to voidable, such that it had no effect even against a bona fide purchaser. The court therefore found Wells Fargo never obtained a valid interest in the property and thus could not pass any interest to appellant.

Given the relatively limited nature of demurrer proceedings, such factual findings should not have been made and relied upon in sustaining the demurrer. "'A demurrer tests the pleading alone, and not the evidence or the facts alleged.'" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315.) Appellant's complaint mentions nothing regarding Tepper, Esola, or what their roles were in the assignments. The

trial court drew entirely from judicially noticed matters, using them as evidence to make its own factual findings as no other court had found the Friar property's chain of title was forged. In doing so, the demurrer proceeding was extended beyond its intended scope. The matter was improperly turned into an evidentiary hearing where appellant could not introduce its own extrinsic evidence to dispute the factual findings.

In addition, the trial court could not take judicial notice of the truth of the findings in the *Cartwright* action and the consolidated SD Friar actions because the matters were subject to appeal. "'A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute.'" (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1374.) The matters that were judicially noticed were not reasonably beyond dispute because they were subject to appeal at the time of the demurrer and, indeed, were subsequently appealed. As discussed above, the *Cartwright* amended judgment was appealed and vacated. The judgment in the consolidated SD Friar actions was also later appealed and is currently pending in the Fourth District Court of Appeal. Given the outcome of these matters remains unresolved, the truth of the findings therein were not subject to judicial notice.[9]

---

[9] Appellant also maintains, even if it is not a bona fide purchaser of Wells Fargo's note and trust deed, it is still entitled to foreclose for nonpayment on the debt as long as the lien is valid. Because the validity of Wells Fargo's interests in the Friar property has not been resolved, it is not appropriate to consider this issue here.

25

### E. *Leave to amend is unnecessary*

Appellant contends amending the complaint is unnecessary because it states a valid cause of action for foreclosure of its trust deed on the Friar property. Appellant argues it can nevertheless amend its pleading to show the assignment in A&S's chain of title was not forged, so appellant should have at least been granted leave to amend.

Here, there were no pleading issues identified concerning the factual allegations in the complaint. The demurrer was sustained entirely on matters of which the trial court took judicial notice, which as discussed above do not show a cause of action is not stated. Accordingly, we conclude amendment is unnecessary because no other pleading defects were identified during the demurrer proceeding.

## DISPOSITION

The March 15, 2023 judgment of dismissal is reversed. On remand, the trial court is directed to vacate its order sustaining the demurrer without leave to amend and enter a new order overruling the demurrer. Appellant is awarded its costs on appeal.

CHAVEZ, J.

We concur:

LUI, P. J.                              ASHMANN-GERST, J.

26